No. 15,694.

Herbertson v. Cruse, Director of Revenue et al.
(170 P. [2d] 531)

Decided July 22, 1946.

Mr. John J. Morrissey, Mr. Harold G. King, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. GEORGE K. THOMAS, Assistant, Mr. CHARLES F. CORY, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS case arose when plaintiff in error, to whom we will hereinafter refer as taxpayer, sought a declaratory judgment defining his rights in respect to application of the Colorado sales and service tax statutes. His complaint was dismissed on motion of defendant, director of revenue, in whose favor judgment was entered for $4,643.67. This assessment covered the period from October 1, 1941 to May 31, 1944. By writ of error, the taxpayer brings the case here for review.

Taxpayer is engaged in the driverless-car business in the City and County of Denver. This involves the purchase of automobiles in wholesale quantities and renting them to the public. The renter's payment includes " (a) a time charge, (b) a mileage charge, (c) a service charge, (d) an oil and gas charge, and (e) a damage charge."

In its judgment, the trial court adopted the director's theory that a sales tax was due on each auto purchased and used by taxpayer in his business, that a service tax was due upon the sums received as a time charge and mileage charge for the use of each car, as well as on the other elements making up the total charge for the use of the rented car. (The Colorado service tax was repealed as of February 28, 1945 [S.L. '45, chapter 227], but was in force during the time covered by this litigation).

Taxpayer's theory is that he should not be required to pay a sales tax upon automobiles purchased in his

business (third specification of points), but that he should collect from his customers and pay to the director a sales tax upon the time charge and mileage charge under section 2 (q) of the Sales Tax Act, S.L. '37, chapter 230, page 1075, 1079 (fourth specification of points), and that he should pay a service tax on the service charge, but not on the time and mileage charges (fifth specification of points). The disposition of the first two specifications of points is controlled by our resolution of the three last specifications of points above set forth.

Taxpayer relies especially on section 2 (q), supra, of the sales tax law which reads as follows: "When right to continuous possession or use of any article of tangible personal property is granted under a lease or contract and such transfer of possession would be taxable if outright sale were made, such lease or contract shall be considered the sale of such article and the tax shall be computed and paid by the vendor upon the rentals paid." Based upon this section, the director promulgated special rule 12, September 15, 1940, which reads: "Motor Vehicles—Continuous Possession Leases.—Where a right to continuous possession of a motor vehicle is granted under a lease or contract for which the lessee pays a monthly rental, these transactions are hereby deemed to come within the provisions of Section 2 (q) of the Sales Tax statute so as to subject the monthly rentals to the two per cent sales tax. The original purchase of the leased equipment by the lessor is, therefore, held to be a purchase for resale exempt from the sales tax. The purchase of repair parts and supplies which are used on such motor vehicles are also wholesale purchases and exempt from the sales tax. The continuous possession leases hereby made subject to the sales tax will not henceforth be subject to the service tax. This regulation shall be in full force and effect on and after September 1, 1940. All prior rules and regulations in conflict herewith are hereby revoked."

We, like the director and the trial court, are of

the opinion that the continuous possession contemplated by both the statute and the rule is not shown in this case. It seems apparent that the most clear-cut example of what the law is intended to reach is the case of a calculating machine or multigraph machine installed at the place of lessee's business and supervised by lessor under a rental agreement covering a continuous (and usually a very considerable) period of time. This involves a more permanent type of lessee than the multifarious types, renting driverless cars for their various purposes, where it might well happen that thirty different persons, each on a different day within a month, could have the rental service of the same car. In the former case, the lessee is securing the most permanent title that the non-selling policy of the lessor allows him to acquire. In the latter case, it doubtless never enters the head of the temporary renter-driver that any one could possibly call him a purchaser or part owner of the car he was driving, especially when he knows that his name has never appeared as the registered owner of the car; nor does he ever appear as the taxpayer, subject to a property tax on the car.

Taxpayer also relies upon the fact that he purchases the cars at wholesale as a reason why he should not be subject to a sales tax on these autos. He contends that he is not the ultimate user contemplated by the statute, but that the renter is the ultimate user; that the automobiles are not entirely consumed by the renters, but that they are resold either to a dealer for resale or to a user—in which event a sales tax is collected and remitted to the revenue department. Taxpayer then argues that in *Bedford v. Colorado Fuel & Iron Corp.*, 102 Colo. 538, 81 P. (2d) 752, the tax sustained was upon property used and consumed in the manufacturing business to produce articles for sale. Likewise, in *Carpenter v. Carman Distributing Co.*, 111 Colo. 566, 144 P. (2d) 770, the tax sustained was upon supplies used in a laundry and dry cleaning business. But in the case at bar,

taxpayer argues that he neither uses nor consumes the automobiles, nor are they used to produce any commodity.

In *Bedford v. Colorado Fuel & Iron Corp., supra,* we said of the sales tax: "The statute was fundamentally intended to impose a tax upon that which is consumed and used and exempts only that which is sold for resale." Taxpayer at no time has contended that he is in the business of selling the cars at retail. The fact that he buys the cars at wholesale rates does not, therefore, of itself exempt him from the tax. His ultimate argument is therefore that he is not the consumer or user, but that the various renters (few or numerous as the case may be) of the cars are the real consumers or users and each should pay the sales tax based on the length of time the car is rented.

Without an express statutory provision, we do not feel there is justification in adopting such a position, which clearly goes beyond the purview of section 2 (q) supra. We also believe the position so urged by taxpayer is not consistent with the basic definitions of "wholesale sale" and "retail sale" found in the statute. Section 2 (e) and section 2 (g), S.L. '35, chapter 189, read as follows:

"2 (e). The term 'wholesale sale' means a sale by wholesalers to retail merchants, jobbers, dealers or other wholesalers for resale and does not include a sale by wholesalers to users or consumers, not for resale; and the sales shall be deemed a retail sales, and subject to the provisions of this act."

"2 (g). 'Retail sale' includes all sales made within the state except wholesale sales."

We are of the opinion that under the foregoing provisions the sale of an automobile by the wholesaler to the taxpayer in the instant case was a sale by a wholesaler to a user or consumer not for resale, and was therefore subject to a sales tax as a retail sale; that the user and consumer of an automobile may not only be he who devotes it to his own personal use, but also he

who, for hire, lends or leases it to a third person; and that there was no showing of continuous use by the renter sufficient to bring the case within section 2 (q), supra, of the statute and special rule 12, supra, promulgated thereunder.

In respect to the service tax, counsel for taxpayer rely for reversal mainly upon the contention that there is a distinction between the term "driverless car business" and "automobile rental service." It is urged that in *Driverless Car Co. v. Glessner-Thornberry Car Co.,* 83 Colo. 262, 269, 264 Pac. 653, and in *Driverless Car Co. v. Armstrong,* 91 Colo. 334, 14 P. (2d) 1098, we used the term "driverless car business" to describe the occupation in which taxpayer in the instant case is engaged; that a legislature meeting subsequent to the rendition of the opinions in those two cases and levying a service tax, inter alia, on "automobile rental service," must have meant something different than the "driverless car business." It is suggested that the term was meant to cover the case where A acts as agent for B in renting the latter's cars to the general public.

We see no reason for adopting this narrow construction, nor for assuming that the terms "driverless car business" and "automobile rental service" can not be synonymous or relate to the same general transactions. If the legislature had intended to limit the tax to the field urged by taxpayer, we believe it would have done so specifically.

It also is argued that of the some forty-six occupations specifically mentioned in the service tax law, under section 5 (c), S.L. '37, chapter 240, page 1144, and of the forty-eight set forth in special ruling No. 71, subsequently promulgated by the Director of Revenue, "automobile rental service" is the only one where the term "rental" is used; that rentals as such are not otherwise taxed; that therefore the time charge and mileage charge for each car, being in the nature of rent and containing no element of service, should be eliminated be-

fore figuring the charge upon which the service tax is computed.

This argument overlooks the fact that one other item of service, in both the act and the rule, is "automobile rent storage garages." It also ignores the fact that we already have approved a service tax in a case where the elements of both a service charge and a rental or time charge were present. In *Bedford v. Colorado National Bank,* 104 Colo. 311, 91 P. (2d) 469 (subsequently approved by the United States Supreme Court in *Colorado National Bank v. Bedford,* 310 U.S. 41), we held that the relationship created under a safety deposit box service is that of bailor and bailee, and not that of creditor and debtor, citing *Tuckerman v. Mearns,* 262 Fed. 607. In the Bedford case it is apparent that the billing included a time charge as well as an exclusively service charge for the supervision and assistance of the attendant in opening and closing the safety deposit box. We take judicial notice of the fact that the rental feature is such a large element in that relationship that the normal billing is "for rent of safety deposit box" from a specified time to another specified time — the service of the attendant being incidental to the renting of the box. We have, therefore, in effect already approved the inclusion of a time charge as an ingredient in a total charge for which a person was liable for a service tax. We see no reason in principle why a mileage charge should not also be such an ingredient—in a world where the two co-ordinates are time and space.

We are of the opinion that the judgment of the trial court, both as to the sales and service tax, should be, and it accordingly is, affirmed.