Ralph B. SHATTUCK, Appellant,

v.

Thomas A. GALLAGHER, Collector of Internal Revenue, Appellee.

No. 12026.

United States Court of Appeals, Sixth Circuit.

Jan. 21, 1955.

Donald C. Alexander, Cincinnati, Ohio, John W. Hudson, Cincinnati, Ohio, on brief; Taft, Stettinius & Taft, Cincinnati, Ohio, of counsel, for appellant.

I. Henry Kutz, Washington, D. C., H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Lyle M. Turner, Sp. Assts. to Atty. Gen., Washington, D. C., Hugh K. Martin, U. S. Atty., Thomas Stueve, Asst. U. S. Atty., Cincinnati, Ohio, on brief for appellee.

Before SIMONS, Chief Judge, and MARTIN and STEWART, Circuit Judges.

SIMONS, Chief Judge.

The appeal requires interpretation of the Railroad Retirement Tax Act, Title 26 U.S.C.A. §§ 1500–1538. The taxes involved are for the three months period ending September 30, 1949, the taxpayer claiming that in so far as the taxes paid by him under § 1510 of the Internal Revenue Code, when added to the taxes paid for him by the Pennsylvania Railroad under § 1520, exceed $36 per month, they were erroneously assessed and to the extent that he has overpaid his taxes, he is entitled to recover. The amount is negligible but this is said to be a pattern case affecting other railroad employees. The appellant sued to recover the excess after his claim for refund was denied and from a judgment for the Collector appeals.

The facts are not in dispute, were submitted by stipulation and found as stipulated. The issues are those of law involving interpretation of the Act and a challenge to its constitutional validity, if the Collector's view of its meaning is adopted. These being the issues, we approach consideration of the Act with these principles of statutory construction in mind, namely, (1) that where a particular construction will produce inequality and injustice, such construction is to be avoided if another and more reasonable interpretation is perceived. Knowlton v. Moore, 178 U.S. 41, 77, 20 S.Ct. 747, 44 L.Ed. 969, (2) if in a taxing statute the words are doubtful doubt must be resolved against the government and in favor of the taxpayer. United States v. Merriam, 263 U.S. 179, 187, 44 S.Ct. 69, 68 L.Ed. 240, and (3) every presumption favors the validity of the Act, Buttfield v. Stranahan, 192 U.S. 470, 492, 24 S.Ct. 349, 48 L.Ed. 525. It is not to be presumed that Congress intended a construction that would subject a statute to a constitutional attack upon obvious grounds.

The present Railroad Retirement Tax Act derived, in some measure, from the Railroad Retirement Act of 1934, which undertook to tax carriers and their employees for the payment of pensions to railroad employees. It was held unconstitutional in Railroad Retirement Board v. Alton Railroad Company, 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468, on grounds not here important. Thereafter, two laws were passed, the Railroad Retirement Act of 1935, 49 Stat. 967, and the Carriers Taxing Act of 1935, 49 Stat. 974. Both were attacked on constitutional grounds and the enforcement of the Carriers Taxing Act was enjoined in Alton R. Co. v. Railroad Retirement Board, D.C.D.C., 16 F.Supp. 955. Two acts followed in 1937, the first amending the Railroad Retirement Act of 1935, 50 Stat. 307, and the second substituting for and repealing the Carriers Taxing Act, 50 Stat. 435. By these acts, now in force, Congress separated the taxing provisions from the benefit provisions provided by the Railroad Retirement Act of 1937. Amendments made in the Railroad Retirement Tax Act of 1946, 60 Stat. 723, appear to have no bearing upon present issues except as it changes rates of taxation, beginning in 1947. As a result, the taxes upon carriers and their employees are collected, it is said, regardless of

whether pensions are paid and pensions are paid regardless of whether taxes are collected. While this may be true, the two acts, which were simultaneously passed, implement a program by which pensions are provided out of funds derived from taxes upon carriers and their employees. They also disclose, with one or more possible departures, an overall pattern of equalizing the tax upon employer and employee, limiting the maximum taxable compensation of the latter to $300 a month, received from all sources, and providing for pro-ration of employers' taxes in the case of an employee receiving compensation from multiple employers.

The appellant was an employee of the Pennsylvania Railroad during the period here involved. The Pennsylvania Railroad paid to the Collector of Internal Revenue its own tax at the statutory rate and also withheld identical amounts from the appellant, which it likewise paid for him to the Collector. Besides being an employee of the railroad, the appellant was also a Regional Grievance Adjuster of the Brotherhood of Railroad Shop Crafts Supervisors, Unit 39, of the Pennsylvania Railroad System, representing employees of the railroad in labor disputes with their employer and received additional compensation from the Brotherhood. The tax collected upon his wages as an employee of the railroad was 6% of his first $300 per month of compensation but the tax collected from him upon his compensation from Unit 39 was 12% of the total amount received per month from the union. There was no pro-ration between the union and the railroad in respect to such added taxes, for the railroad paid no part of them. The appellant claims that to the extent that his taxes exceed $36 a month, arrived at by multiplying the taxable maximum of $300 by 12%, he overpaid his taxes and is entitled to a refund.

This brings us to a consideration of the specific provisions of the Railroad Retirement Tax Act, incorporated in the Internal Revenue Code as 26 U.S.C.A. §§ 1500–1538. Section 1500 lays an income tax on every employee equal to 6% (1949) of the compensation paid to him for services rendered based on compensation not in excess of $300 for any calendar month. Section 1520 lays an excise tax on the employer equal to 6% (1949) of compensation paid by it to any employee for any calendar month not in excess of $300. It also provides for a system of pro-ration when the employee receives compensation from more than one source. So far as these two sections are concerned, the tax on the employee and the excise on the employer are equivalent, both as to rate and the amount of taxable compensation. However, § 1532(a) defines employer to include any carrier or railway association, and also any railway labor organization, *national in scope,* organized in accordance with the provisions of the Railway Labor Act, 45 U.S.C.A. § 151 et seq. It is conceded that the Brotherhood of Railroad Shop Crafts Supervisors, of which Unit No. 39 is a part, is not a railway labor organization national in scope. Although the relationship of the appellant to Unit No. 39 is, in common understanding, a relation of employee and employer, Unit 39 does not come within the definition of employer found in § 1532(a). The reason for its exclusion is not satisfactorily explained and the legislative history of the act fails to disclose it. The Collector suggests that the difficulties of administering the law and making collections required a heavier tax upon unions, nonnational in scope, whose employees are denominated in § 1532(c) as "employee representatives" rather than as employees. The suggestion that the distinction was called for by considerations of administrative convenience would seem to be unsound in view of the substantial difference in rates applied to the two types of labor organizations. We rejected a somewhat similar argument in Nierotko v. Social Security Board, 6 Cir., 149 F. 2d 273, affirmed Social Security Board v. Nierotko, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718. It is just as reasonable to suggest that the distinction is based

on the fact that agents of unions are frequently fulltime union employees with substantial salaries and, so, better able to contribute to a pension fund, than railroad employees, compensated by wages.

Section 1510 lays an income tax of 12% (1949) on compensation paid to an employee representative for services rendered not in excess of $300 for any calendar month. It is silent, however, upon any distinction between representatives of national or non-national labor organizations, says nothing about applying the $300 maximum separately to employee's wages and union salary, and makes no mention of pro-ration. Section 1511, however, provides: "The compensation of an employee representative for the purpose of ascertaining the tax thereon shall be determined in the same manner and with the same effect as if the employee organization by which such employee representative is employed were an employer as defined by section 1532 (a)." While § 1511 says nothing of rates, it does speak in terms of compensation, the manner in which it shall be determined, and the effect of such determination. It would seem, therefore, that for all practical purposes it puts the employee representative, in respect to his compensation, back into the category of a representative of a railway labor organization, without regard to distinctions between national and nonnational labor organizations, and, so, becomes the pivotal section in the present controversy. Moreover, § 1532(e) defines the term "compensation" as "any form of money remuneration earned by an individual for services rendered as an employee to one or more employers, or as an employee representative * *."

Under the Collector's interpretation of the Act, two employees of the railroad who received the same compensation, but one of whom is also employed by a national union, and the other by a non-national union, are to be taxed at different rates and upon different amounts. There is, therefore, unfairness and inequity in the result. This the Collector apparently concedes when he says: "Looking at the matter from the viewpoint of the taxpayer, as an individual, we are not unsympathetic with the position in which he finds himself under the statute. * * * The taxpayer's appeal should be directed to the Congress." We take this to mean that there is no basis for judicial interpretation of unclear or conflicting sections. We do not agree.

Moreover, the act, as applied by the Collector, leaves the employer without guidance in determining what proportion of the tax it should pay. No statutory answer is provided in this respect and the asserted interpretation does violence to the purpose recognizable in the present act as well as in the invalidated and amended statutes.

Whether the Congress, in enacting §§ 1510 and 1511, was primarily concerned with the thought that union representatives, as such, should not escape taxation, we need not decide. It is sufficient, for our purpose, that they conflict, that cumulating compensation and doubling of rates result in unreasonable and unfair discrimination, and that a determination of constitutional invalidity is to be avoided. Wherefore,

Reversed, and the cause remanded for the entry of judgment for the claimed refund, with interest.