Nathan GELLMAN, Burt Horwitz and Peter Podany, Co-Partners, d/b/a Gellman Brothers, Appellants,

v.

UNITED STATES of America, Appellee.

No. 15442.

United States Court of Appeals Eighth Circuit.

June 25, 1956.

88

Maurice Weinstein, Milwaukee, Wis. (Charles Halpern, Minneapolis, Minn., on the brief), for appellants.

Kenneth E. Levin, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Acting Asst. Atty. Gen., Lee A. Jackson and Hilbert P. Zarky, Attys., Dept. of Justice, Washington, D. C., and George E. MacKinnon, U. S. Atty., St. Paul, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This appeal involves the question of what constitutes a sale at retail within the meaning of sections 1651 and 2400 of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. §§ 1651, 2400. Appellants, plaintiffs below and hereinafter called taxpayers, brought this suit for recovery of excise taxes alleged to have been erroneously assessed for the years 1947, 1948, 1949, and 1950, and January and February of 1951. Taxpayers paid the taxes assessed and filed timely claims for refund. The District Court, after trial without a jury, allowed the taxpayers judgment for the amount of error conceded by the Government and the amount of tax on sales made to pocket merchants, with interest upon such items, and in all other respects denied taxpayers relief. The trial court's opinion is reported at D.C., 129 F.Supp. 291. Taxpayers have appealed from the judgment to the extent that it denied them the relief they asked. This court has jurisdiction.

It is alleged in the petition and conceded in the answer that taxpayers' principal business is selling at wholesale novelties, premium goods, and other merchandise, which goods are bought by taxpayers' customers primarily for sale and disposition. Taxpayers issued 25,000 wholesale catalogs annually, and their sales ran from $400,000 to $800,000 per year to some 8,000 customers, most sales arising out of orders from the catalog, although some sales resulted from direct solicitation and purchase at taxpayers' place of business. The sales were at wholesale prices and generally in substantial quantities. All invoices were stamped, "All merchandise billed is sold for resale only." The taxpayers' sales records for 1950 and the first two months of 1951 were examined in detail by internal revenue agents who concluded that sales in the categories hereinafter described were retail sales and were subject to excise tax.

The facts, mostly stipulated, relative to the sales here in controversy, the taxes assessed thereon, and the disposition of the goods by purchasers, are summarized by the trial court as follows, 129 F. Supp. at page 293:

| "Category of Customer | Sales | Tax |
|---|---|---|
| (1)—Lodges, Churches & Clubs 100% disposed of by these customers as prizes | $ 3,449.11 | $ 477.29 |
| (2)—Bars, Taverns & Cafes 50% disposed of as prizes | 1,736.08 | 259.19 |
| 50% disposition not agreed but plaintiffs contend was resold | 1,736.17 | 259.19 |
| (3)—Industrial Concerns 100% disposed of in following manner without specific allocation (a) given as premiums in connection with sale of other merchandise (b) given as incentive awards to employees . (c) given as awards to employees or preferred customers | 457.60 | 50.55 |
| (4)—Operators, Concessionaires and Pocket Merchants (Peddlers) 30% sold to operators and disposed of as prizes on games | 6,101.82 | 970.12 |
| 50% sold to concessionaires and disposed of as prizes | 10,169.69 | 1,616.88 |
| 10% sold to operators—disposition not agreed but plaintiffs contend was resold | 2,033.94 | 323.37 |
| 10% sold to pocket merchants—disposition not agreed but plaintiffs contend was resold by them | 2,033.94 | 323.37 |
| (5)—Individuals 100% disposed of by personal or family use | 5,196.17 | 670.95 |
| Total for period January 1, 1950 through February 1951 | $32,914.42 | $4,950.91 |

"The parties have further stipulated that sales for the years 1947

through 1949, upon which the tax was estimated in the amount of $3,-423.27, were made to customers in the various categories in the same proportions as shown in the summary and disposed of by them in the manner there indicated."

Taxpayers stipulated that Category (5), individuals' sales, were retail sales subject to excise tax. In explanation of this stipulation Mr. Gellman testified:

"I do not know as a matter of fact whether all the sales to individuals referred to in paragraph 15 of the stipulation were purchased by such individuals for their personal use. We agreed to the stipulation to simplify matters. I thought we would waive that portion of it and pay a tax on that."

The stipulation justified the imposition of the tax upon the Category (5) sales. It is noted, however, that such sales constituted only approximately one per cent of taxpayers' volume.

The trial court found that sales to pocket merchants were sales for resale, but found that the taxpayers had not satisfactorily established that any of the other questioned sales were sales for resale. Such findings are warranted by the record.

The decisive issue in this case is whether the sales described in Categories (1) to (4), inclusive, were sales at retail within the meaning of the applicable excise tax statutes. Leather goods and jewelry were the subject matter of the sales here under scrutiny. The excise tax upon leather goods is imposed by section 1651 of the Internal Revenue Code of 1939 which provides, "There is hereby imposed upon the following articles * * * sold at retail a tax equivalent to 20 per centum of the price for which so sold * * *." Section 2400 imposing a tax on jewelry provides, "There is hereby imposed upon the following articles sold at retail a tax equivalent to 10 per centum of the price for which so sold * * *." The trial court interpreted the phrase "sold at retail" as being the equivalent of "sale for a purpose other than resale." If the court was justified in so doing, the sales here questioned were retail sales and subject to the excise tax.

The pertinent statutes, heretofore quoted, do not define the word "retail." Counsel for both sides advise that there are no decided cases arising under the excise tax statutes interpreting this word. Courts frequently resort to established rules of construction to aid them in construing words and phrases appearing in statutes. Among such rules are the following:

"* * * we have not been unmindful of the rule, frequently stated by this court, that taxing acts 'are not to be extended by implication beyond the clear import of the language used,' and that doubts are to be resolved against the government and in favor of the taxpayer. The rule is a salutary one, but it does not apply here. The intention of the lawmaker controls in the construction of taxing acts as it does in the construction of other statutes, and that intention is to be ascertained, not by taking the word or clause in question from its setting and viewing it apart, but by considering it in connection with the context, the general purposes of the statute in which it is found, the occasion and circumstances of its use, and other appropriate tests for the ascertainment of the legislative will. * * *" Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 93–94, 55 S.Ct. 50, 54, 79 L.Ed. 211.

"'The legislature must be presumed to use words in their known and ordinary signification.' * * * 'The popular or received import of words furnishes the general rule for the interpretation of public laws.' * * *" Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560, 52 S. Ct. 211, 213, 76 L.Ed. 484, approved

in substance Crane v. Commissioner, 331 U.S. 1, 6, 67 S.Ct. 1047, 91 L.Ed. 1301.

"* * * 'The rule of strict construction is not violated by permitting the words of the statute to have their full meaning, or the more extended of two meanings, as the wider popular instead of the more narrow technical one; but the words should be taken in such a sense, bent neither one way nor the other, as will best manifest the legislative intent.' * * *" Securities & Exchange Commission v. C. M. Joiner Leasing Corp., 320 U.S. 344, 355, 64 S.Ct. 120, 125, 88 L.Ed. 88.

"* * * But in statutes levying taxes the literal meaning of the words employed is most important, for such statutes are not to be extended by implication beyond the clear import of the language used. If the words are doubtful, the doubt must be resolved against the government and in favor of the taxpayer. * * *" United States v. Merriam, 263 U.S. 179, 187–188, 44 S. Ct. 69, 71, 68 L.Ed. 240. To the same effect, see Leich & Co. v. United States, 7 Cir., 210 F.2d 901, 907; Shattuck v. Gallagher, 6 Cir., 218 F. 2d 428, 429.

Our first problem is to determine whether the trial court's definition of "retail" is a permissible and recognized definition. In Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383, the Supreme Court had occasion to determine whether an electrical engineering company was exempt from the operation of the Fair Labor Standards Act, 29 U.S.C.A. § 213(a) (2), as a retail or service establishment, and concluded that it was not. The Court made an exhaustive study of the word "retail," and, among other things, in the course of its opinion states, 326 U.S. at pages 673–674, 66 S.Ct. at page 420:

"* * * In general usage the noun 'retail' means 'The sale of commodities in small quantities or parcels;—opposed to *wholesale.*' The verb 'retail' means 'To sell in small quantities, as by the single yard, pound, gallon, etc.; to sell directly to the consumer; as, to *retail* cloth or groceries.' Webster's New International Dictionary, Unabridged (2d ed., 1938).

"In the suggested use of the word 'retail' as opposed to the word 'wholesale,' a distinction appears not merely between the size and volume of the sales but between types of purchasers. For example—

"'Wholesaling includes all marketing transactions in which the purchaser is actuated solely by a profit or business motive in making the purchase.

"'Retailing includes all marketing transactions in which the purchaser is actuated solely by a desire to satisfy his own personal wants or those of his family or friends through the personal use of the commodity or service purchased.' (Beckman and Engle in Wholesaling Principles and Practice (1937) p. 25.)

"Similarly the Encyclopedia of Social Sciences states that 'The distinguishing feature of the retail trade * * * consists in selling merchandise to ultimate consumers,' (Vol. 13, p. 346) whereas wholesaling is said to cover sales 'to a retailer, a wholesaler, or an industrial consumer so long as the purpose of the customer in buying such goods is to resell them in one form or another or to use them for business needs as supplies or equipment.' Vol. 15, 411.

"Governmental usage makes the same distinction on the basis of the use for which the goods are purchased. * * *"

The Court then proceeds to set out similar interpretations made of the words "wholesale" and "retail" by the Bureau of the Census, the Bureau of the Budget, the Social Security Board, and the Wage and Hour Division of the Department of Labor. The trial court's interpretation

of the phrase "sold at retail" is opposed to the interpretation given "retail" by the Supreme Court in the Roland Co. case, and is not supported by any standard dictionary definition of the term or by any other persuasive authority.

The Government, in support of the trial court's interpretation, relies upon a series of State court decisions pertaining to questions arising out of State sales tax statutes, among them, Bigsby v. Johnson, 18 Cal.2d 860, 118 P.2d 289; Herbertson v. Cruse, 115 Colo. 274, 170 P.2d 531, 172 A.L.R. 1312; Sandberg Co. v. Iowa State Board, 225 Iowa 103, 278 N.W. 643, rehearing denied, 225 Iowa 103, 281 N.W. 197; Snite v. Department of Revenue, 398 Ill. 41, 74 N.E. 2d 877; Wiseman v. Gillioz, 192 Ark. 950, 96 S.W.2d 459.

It is quite true that many cases based upon State statutes hold in substance that retail sales tax is due upon any sale not for resale. In its brief the Government concedes that "Unlike the Internal Revenue Code sections involved here, most of the state statutes imposing retail sales taxes define the term 'retail.'" In the light of this concession we forego discussing the State cases in detail. In all the State cases we find that "retail" for sales tax purposes is defined by the applicable statute. For example, section 422.42, paragraph 3, Iowa Code Annotated, pertaining to sales tax provides in part:

"'Retail sale' or 'sale at retail' means the sale to a consumer or to any person for any purpose, other than for processing or for resale * * *."

The Iowa court, in interpreting this statute in the Sandberg Co. case, supra, rejected as immaterial the taxpayer's contention that the sale of repair material by a wholesaler to a shoe repairman was not in the ordinary business sense a retail sale, stating, 278 N.W. at page 645:

"* * * In construing this statute, we are bound by the definition of terms made use of by the Legislature. As stated by this court in the case State v. City of Des Moines, 221 Iowa 642, 266 N.W. 41, 42, 'the Legislature is its own lexicographer.' The guiding and controlling consideration is 'the disposition of the goods made by the buyer, not the character of the business of the seller or the buyer.' * * * *"

The Government also cites Hotels Statler Co. v. District of Columbia, 91 U.S.App. D.C. 122, 199 F.2d 172. This case involves the sales tax imposed in the District of Columbia by Congress. The statute imposing the tax, like the various States sales tax acts, specifically describes the transaction subject to tax. In the Act imposing an excise tax on toilet preparations, 26 U.S.C.A., § 2402 (b), Congress sets out by statutory definition what shall constitute a sale at retail.

In our opinion, the fact that the various State and federal statutes give the words "retail sale" a different meaning than their ordinary and generally understood meaning does not create a new general meaning for such words. The uniform practice of State legislatures in defining what, for the purpose of the statute, constitutes a taxable retail sale clearly indicates to us that the States recognize that when they desire to reach beyond the usual and ordinary meaning of words, such as "retail sale", a statutory definition is necessary to accomplish such purpose. The varying statutory definitions of "retail sale" do not, except for the purposes of the particular statute, change the usual and ordinary meaning of such words. Any other conclusion would lead to uncertainty and confusion as there are substantial differences in the various statutory definitions. The Internal Revenue Regulations give us very little help in solving our problem. No definition of a retail sale is there found. Section 320.1(b) of Treasury Regulations 51, provides:

"The phrase 'every person who sells at retail' means any person engaged in the business of selling articles to a purchaser at retail."

This regulation does nothing to clarify the statute. Section 320.23 of Treasury Regulations 51, as amended, provides:

> "*Sales for Resale.*—All sales of taxable articles by persons engaged in the business of selling such articles at retail are presumed to be sales at retail, unless the character of a sale as a sale for resale is evidenced either (1) by a 'retailers' exemption certificate' furnished by the purchaser in the form outlined herein, or (2) by equivalent proof of exemption."

The Government cites the foregoing regulation and contends that since taxpayers did not file retailers' exemption certificates all of their sales are presumed to be sales at retail.

▮ We do not believe that the last cited regulation applies to the taxpayers. It is clearly established that they were primarily wholesalers. A few isolated retail sales would not be sufficient to put the taxpayers in the category of persons engaged in the business of selling at retail. It would be unreasonable to require a person whose business was approximately 99 per cent wholesale to file retailers' exemption certificates as to all of his extensive wholesale transactions, and such a result should not be thrust upon the taxpayers in the absence of expression of clear legislative intent requiring it.

Section 320.5(d) of Regulations 51 provides:

> "The giving of a premium in consideration of the return of wrappers, labels, coupons, trading stamps, or other scrip, delivered or sold in connection with the sale of a commodity, constitutes a taxable transaction, and the person so giving the premium is considered to be one who sells at retail."

The Government in its brief concedes for the purpose of this case that the sales to customers in Category (3), which involves purchasers of merchandise for premiums to be given in connection with the sale of other merchandise, as incentive awards to employees, and as awards to employees and preferred customers, are not retail sales, stating:

> "The position of the Internal Revenue Service, with which we agree, is that the transfer of taxable articles as premiums or as stimulants for the sale of other goods, the transfer of such articles to employees (when truly representing part of the employees' compensation for services rendered even though designated as incentive awards) and similar transactions where a real consideration passes to the vendor for the transfer of the articles, is, of itself, a retail sale."

There are apparently no specific regulations pertaining to the transfer of merchandise by concessionaires, punchboard operators, and the like. We seriously doubt whether the prizes awarded in connection with games of skill or chance at fairs, carnivals, clubs, and bars are transferred with a donative or charitable intent. A charge is usually made for the privilege of playing the games and the prizes are used to induce the players to spend their money. It seems clear that the prizes are purchased and used for business purposes. The offering of door prizes is also usually motivated by business purposes, such as increasing the admissions at the door, or increasing the number of participants in any enterprise that may be in progress. We can see no substantial distinction between Category (3) customers and Categories (1), (2), and (4) customers so far as the use made of the merchandise purchased from the taxpayers is concerned.

Even if we assume, as the Government urges, that Congress in shifting from a manufacturers' tax to a retail tax did not intend to overlook imposing a tax somewhere along the line, what has heretofore been said illustrates that Congress has not stated with certainty just what it considers to be the retail level. If it chose, Congress could by appropriate language have designated the transferror of merchandise in exchange for coupons or trade stamps the seller at retail. It could also have provided that the opera-

tors of punchboards and other games of skill or chance are retailers to the extent of the value of the prizes awarded. It was also in Congress's power to make all sales not for resale taxable. However, our present problem is to interpret the Act passed, not to determine what type of an Act could have been passed.

 The Supreme Court in the Roland Co. case, supra, has given "retail" a definite meaning. The definition ascribed to "retail" by the trial court does not fall within such meaning. Where words are susceptible of several meanings, the court is at liberty to determine from the legislative history and surrounding circumstances the sense in which the words were used in a statute. However, where, as here, the interpretation urged by the Government is not supported by common usage, dictionary definition, or court decision, such interpretation can not be upheld. Congress has demonstrated in the District of Columbia Sales Tax Act, D.C. Code, 1951, § 47–101 et seq., and in the Act imposing a tax upon toilet articles, that when it desires to give "retail" an unusual or enlarged meaning that end is accomplished by statutory definition. Likewise, State legislatures, wishing to enlarge the meaning of "retail" for sales tax purposes, accomplish this result by statutory definition. It is the function of the legislative branch of the Government to write the laws. If Congress desires the word "retail" in excise tax statutes to have a special meaning, it can and should say so.

Applying the rules of interpretation heretofore set out to the facts of this case we conclude: (1) the meaning of the words "sale at retail" adopted by the trial court is not a common, ordinary, usual, or accepted meaning of such words; (2) the statute read as a whole does not indicate an intention upon the part of Congress to so define the words; (3) there is nothing in the legislative history which demands such a construction; and (4) taxes should be imposed by Congress, not by the courts, and when se-

rious doubt arises as to taxability, as it does in this case, the doubt should be resolved in favor of the taxpayer. The law should be applied as written, and strained and artificial constructions should be avoided.

The judgment of the trial court is reversed, and the case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.