Sol LAUFMAN, doing business as Laufman's Jewelers, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 13031.

United States District Court
S. D. Texas,
Houston Division.

Nov. 20, 1961.

Kenneth Minter and R. Allen James, Houston, Tex., for plaintiff.

John B. Jones, Jr., Acting Asst. Atty. Gen., Lyle M. Turner, Myron C. Baum, Harold A. Chamberlain, William M. Ravkind, Attys., Dept. of Justice, Washington, D. C., Woodrow B. Seals, U. S. Atty., William L. Bowers, Jr., Asst. U. S. Atty., Houston, Tex., for defendant.

INGRAHAM, District Judge.

Plaintiff taxpayer, Sol Laufman, doing business as Laufman's Jewelers, seeks refund of federal excise taxes in the amount of $20,478.49, plus interest, paid defendant government from January 1953 to December 1956. These payments were made pursuant to Section 2400 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 2400, and Section 4001 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 4001. The language of the two sections insofar as it applies here is identical and reads as follows:

> "There is hereby imposed upon the following articles sold at retail a tax equivalent to * * * percent of the price for which so sold * * *." 26 U.S.C. 1958 ed., Sec. 4001; 26 U.S.C. 1952 ed., Sec. 2400.

Included within the list of enumerated articles are watches and clocks.

The taxes in dispute relate to an extended sales arrangement between taxpayer and the Humble Oil & Refining Company (hereafter Humble) whereby Laufman supplied, upon order, large quantities of watches and clocks for use by Humble as length of service, retirement, merit, safety, and other incentive awards. At the appropriate times, tax-

payer paid retailers excise taxes on these items. On February 1, 1957, Laufman filed a claim for refund with the District Director of Internal Revenue, seeking to recover back the amount of the excise taxes paid on the items sold to Humble. The Commissioner of Internal Revenue disallowed taxpayer's claim, and he now seeks redress as plaintiff in this court.

In support of his claim for recovery, taxpayer contends that the sales in question were not retail sales within the meaning of Section 2400 of the Internal Revenue Code of 1939, or Section 4001 of the Internal Revenue Code of 1954; and, alternatively, that if the nature of taxpayer's business is the controlling factor in determining excise tax liability rather than the character of the individual sales, such sales were made by a separately identifiable wholesale business conducted by the taxpayer.

Taxpayer has set out at length in his briefs the elements which he contends show that these items were not "sold at retail", viz., that the sales arose out of a contract awarded under a competitive bidding system; that the sales were in bulk; that profit was figured as a percentage of cost price—usually 10–12%—which is normal procedure in a wholesale transaction, instead of as a percentage of the sale price which in taxpayer's normal over-the-counter retail sales was around 40%; that the usual guarantees and servicing which accompanied over-the-counter single item sales were not extended in these sales to Humble; and finally that Humble was motivated by purely business reasons in making these purchases. Accepting all of these facts as established, nevertheless this court cannot conclude therefrom that these were other than retail sales.

There is no explicit definition of "sold at retail" contained in the excise tax statutes, their legislative history or the Treasury Regulations. There are two circuit court cases however, Gellman Bros. v. United States, 235 F.2d 87 (8th Cir. 1956), and Torti v. United States, 249 F.2d 623 (7th Cir. 1957), which give consideration to this phrase. These cases give no weight to the factors of competitive bidding, methods of determining sale price, or whether or not particular guarantees accompany the sales. Indeed, it appears that these factors can be of no aid to this court in arriving at a determination in the instant case. There has been no suggestion that competitive bidding is either the forte of the wholesaler or anathema to the retailer, nor is it clear that the reduced prices and abbreviated guarantees are anything more than manifestations of the economic rigors of competitive bidding. The Gellman and Torti cases do stress, inter alia, the size of the sale and the subsequent disposition of the items by the purchaser as definitive of the nature of the transaction. In substance, they hold that a retail sale is a sale in small quantities to the ultimate consumer, while a wholesale sale is said to be characterized by a sale in large quantities to purchasers who are not the ultimate consumers, and who seek to satisfy business or profit motives.

The Gellman case involved the applicability of an excise tax to sales of luggage and jewelry which was disposed of by the purchasers as prizes and awards. The court, in deciding that the factors of a wholesale sale were involved, found that the taxpayers were *primarily wholesalers* and that the questioned items were sold in the regular course of a wholesale business. The facts in the Torti case were like those in Gellman in that sales of luggage, watches and jewerly were made by Torti, *whose principal business was wholesale sales*, to customers who purchased the items for use as prizes in connection with their businesses. Here also the court found that the questioned items were sold in the regular course of the taxpayer's wholesale business, making the Gellman case clear precedent for holding that the items were non-taxable.

There are a number of important factual dissimilarities between the Gellman and Torti cases, and the case at bar. In neither Gellman nor Torti was there a disputed retail/wholesale classification of items sold to be used internally by an industrial consumer without a subsequent

distribution to customers in the form of prizes, awards, etc. In both Gellman and Torti, the dispute centered around items sold by a wholesaler to an intermediary who, in turn, disposed of the items by giving them away to third parties not connected with the purchaser's business or undertaking, as a stimulant to trade or profit making endeavors. Of the four classifications of purchasers involved in the Gellman case, only a segment of one of these groups involved items which were used as incentive awards or other types of awards given to employees of the purchaser. In the aggregate, this accounted for less than one percent of the taxes levied, and in fact it developed that this segment of Gellman's sales was not in dispute, inasmuch as the Government conceded that as to those items the tax had been erroneously levied because of consideration which passed from the employees to the purchaser/employer in return for the items, resulting in a recognizable resale. 235 F.2d at 92. It is not contended that this is the situation in the instant case.

In the Torti case, the dispute involved the sale of items which were disposed of by the purchasers as prizes for winning at commercial games of chance or skill, or as attendance stimulants for bazaars, etc.

In substance, it is clear that the purchasers in the Gellman and Torti cases were not ultimate consumers, which is significant to the determination that the sales there were not at retail. But in the instant case, Humble is an ultimate consumer, using the purchased items in its employee relations program. Placing emphasis on the ultimate use of the purchased items, Humble is just as much an ultimate consumer as would be an individual who purchases watches or clocks with the intention of giving them as gifts to his family or business relations. Within the test of the Gellman case, the individual would be purchasing at retail. The mere fact of incorporation does not alter the substance of the parallel disposition.

From this discussion it is evident that the distinction between "retail" and "wholesale" based on the size of the purchase and the ultimate disposition of the items is at best an imperfect guide. This results from the situation, as here, where the two elements of size of purchase and ultimate disposition do not coincide in a manner consistent with the definitions, i. e., where you have bulk sales to a purchaser who is the ultimate consumer, or where you have small lot or single item sales to a purchaser who intends to resell the merchandise or apply it to a clear business need or profit objective. The resolution of this problem, consistent with administratively feasible enforcement of the excise tax statutes, can be had by giving consideration to the additional factor of the nature of the seller's business. Certainly there is nothing in the Gellman or Torti cases to suggest that this was not a crucial consideration in their findings vis-a-vis the applicability of the retailers excise tax to the facts then at bar. In both cases, reference was made in various contexts to the fact that taxpayers conducted wholesale businesses. In a more recent case, O. C. Tanner Jewelry Co. v. United States, 5 A.F.T.R.2d 1992 (D.C.Utah 1960), where sales of items to be used as prizes and awards were held to be not subject to federal excise taxation, the specific holding was that the articles were sold "at other than retail and as a part of plaintiff's regularly established wholesale business * * *", giving equal emphasis to both considerations.

■ Taxpayer argues that the character of the seller's business as being either predominantly retail or wholesale is immaterial under the language of the statute, which reads "sold at retail"—speaking to the nature of the sale—and not "sold by a retailer"—speaking to the nature of the seller's business. And yet, Chapter 31 of the Code, which promulgates the tax, designates that it is a *retailers* excise tax. Judged in the light of this designation, it would appear to be error to fail to give weight to the nature of the seller's business in arriving at the applicability of this tax.

Thus, apart from the dissimilarity in the nature of the sales, the controlling dis-

tinction between the Gellman and Torti cases and the instant case is this: in the case at bar there is no stipulation, as in Gellman, or clear showing, as in Torti, that the sales were made in the regular course of a wholesale business. In fact, the evidence in this case shows that the sales by taxpayer were made by Laufman's Jewelers, a retail business. In Rev. Rul. 59–287, 1959–2 Cum.Bull. 239, the Internal Revenue Service passed upon a hypothetical fact situation in all respects akin to the one at bar and concluded that " * * * to qualify as wholesale sales not subject to the retailers excise tax under those decisions (i. e., the Gellman and Torti decisions), the Gellman-type sales must be made as a part of or in the course of a regularly established wholesale business." This court is disposed to accept this ruling as representing the most equitable and administratively realistic approach to fulfillment of the objectives of the excise tax statutes in question.

There is no dispute that Laufman's was taxpayer's retail outlet. Applying the test as set out above, if the sales in question were made by this retail outlet then the excise taxes properly accrue. But taxpayer also has an established wholesale outlet registered with the state under the assumed name statute as the National Jewelry Company. National has operated as a wholesale jewelry business since 1945 at the same address as taxpayer's retail outlet. It has been held out to the public as a wholesale jewelry business through advertisements in the Yellow Pages of the telephone directory, the Houston Buyers' Guide, a publication of the Houston Chamber of Commerce, calling cards with National Jewelry Co. printed thereon, and a sign in plaintiff's store. It is not questioned that National engaged in a substantial dollar volume of business during the years in question. If it could be said that the sales in dispute were a product of this wholesale business, as the taxpayer argues, then the Gellman case as I have interpreted it would be precedent for holding that no excise tax liability ever arose. But the evidence reflects that these sales were in no way connected with taxpayer's wholesale business.

The testimony revealed that Humble's purchasing agent did not deal with National during the years in question (Tr. 45). Humble's purchase order was directed to Laufman's. Laufman's name was used on the billing order to Humble. Because taxpayer did not maintain separate books or records for his retail and his wholesale businesses, he cannot show a business procedure practice of treating sales to Humble as meriting any classification other than retail sales by Laufman's Jewelers.

In essence, to qualify for an exemption from excise taxation, a taxpayer in Laufman's position of maintaining both a wholesale and a retail business must first overcome a presumption of a retail sale. This requirement, and the conditions for satisfying it are expressed in Treas.Reg. 51 (1941 ed.) 320.23 (as added by T.D. 5475, 1945 Cum.Bull. 435):

> "All sales of taxable articles by persons engaged in the business of selling such articles at retail are presumed to be sales at retail, unless the character of a sale as a sale for resale is evidenced either (1) by a 'retailers' exemption certificate' furnished by the purchaser in the form outlined herein, or (2) by equivalent proof of exemption * * *"

It must be assumed, in order to give effect to the presently accepted definition of wholesale sale, that "equivalent proof of exemption" would take into account other elements than simply that the sale was for resale, such as the fact that the taxpayer made the sale through his separately identifiable wholesale business. Taxpayer was well aware of this presumption, and the record shows that he had adverted to "retailers' exemption certificates" in his business when he made what he considered to be a wholesale sale. As evidence of his contemporaneous classification of these sales to Humble, no such certificates or equivalent evidence was sought from the purchaser. Taxpayer now contends that the reason he did not ask for exemption certificates or equivalent proof from

Humble, coupled with his payment of the tax, was because he was misled by Internal Revenue Service pronouncements as to the true status of the law as applied to his situation as exemplified by the Gellman and Torti decisions. To the contrary, whatever his reasoning may have been, this court finds that his conclusions concerning the law which led to the payment of the taxes were correct.

■■ In summary, to overcome the presumption of a retail sale, under the facts of this case, a dual showing must be made (1) that the character of the sale in its various elements clearly establishes a wholesale transaction according to the accepted understanding of this term, and (2) that the sale was made by a separately identifiable and regularly established wholesale business. Plaintiff taxpayer has not satisfied these requirements.

Counsel will draft and submit judgment for defendant.