INTERNATIONAL BUSINESS MACHINES CORPORATION, Respondent,

v.

STATE TAX COMMISSION of Missouri et al., Appellants.

No. 49240.

Supreme Court of Missouri,

Division No. 2.

Nov. 14, 1962.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 11, 1962.

Thomas F. Eagleton, Atty. Gen., Eugene G. Bushmann, Robert D. Kingsland, Asst. Attys. Gen., Jefferson City, for appellant.

Fordyce, Mayne, Hartman, Renard & Stribling, Walter R. Mayne, Nelson W. Hartman, Thomas Rowe Schwarz, St. Louis, for respondent.

BARRETT, Commissioner.

In reversing a finding of the State Tax Commission the circuit court has found that certain of International Business Machines Corporation's (IBM) transactions are not subject to the state sales tax and has therefore ordered a refund of $238,459.69 "with interest from date of payment at the rate of six per cent." Thus upon this appeal by the commission the question for determination is whether certain rental or lease transactions are subject to the two per cent sales tax. Specifically, the question is whether those transactions under IBM's "Agreement for IBM Machine Service" are in fact sales at retail and therefore subject to the tax.

The briefs of the parties, at least in the citation of cases and statutes, have taken a wide range, but the cause was submitted to the circuit court upon the agreed statement of facts presented to the tax commission and that submission has limited and narrowed the issues involved. In view of the precisely limited question thus presented it is neither necessary nor desirable to consider terms and definitions not involved in the appeal, as "gross receipts," or other taxes not in issue, as the closely related and supplementary "use tax." V.A.M.S. § 144.600 et seq. Southwestern Bell Tel. Co. v. Morris, (Mo.) 345 S.W.2d 62. And in this connection it should be carefully noted that actual or admitted retail sales or other IBM transactions are not involved upon this appeal because it was stipulated that "only amounts paid as sales tax by IBM on its rental charges to Missouri lessees can properly be involved in IBM's refund claim." As to the particular transactions actually involved IBM's claim for

a refund extends over a period of eight quarters beginning with the 4th quarter of 1957 and including the 3d quarter of 1959, two full years. And it was stipulated that "The issues presented for the decision of the Commission are whether or not the Sales Tax Law of the State of Missouri imposes a tax on the revenue produced by the rental of IBM business machines, * * and secondly, there being in this case no question as to some possible expenditure for service if no tax is imposed on this type of revenue, may IBM recover under the statutes for a period in excess of one year prior to the filing of the petition for refund." It may be added that the third question is whether in its judgment the circuit court properly allowed 6% interest on the refunds from the dates of the payments of the tax.

■ The background of the controversy is this: Throughout the history of the sales tax act, since 1935, there had been a dispute as to whether it covered certain transactions, particularly transactions involving rentals or leases requiring some servicing of the leased machine or product. The controversy was resolved in 1946 when by letter the taxing authorities and IBM entered into an agreement "that 50% of all rental receipts were, in essence, charges for services and were not taxable under the Sales Tax Law, but taxes (meaning 2% sales tax) were paid on the balance." That expedient or arrangement continued until July 30, 1959, when the Department of Revenue advised IBM that thereafter "no deduction for service will be allowed, other than actual and accurate charges for direct labor used in servicing or repairing rented machines." IBM refused to make a separate billing and report of its rental and service transactions and took the position that no part of its rental or lease transactions was subject to tax under the act and, as indicated, filed with the department its tax adjustment affidavit for taxes paid under the 1946 arrangement beginning with the fourth quarter of 1957.

The transactions immediately involved are those made under IBM's written contract form called "Agreement for IBM Machine Service," and, as indicated, this appeal is not concerned with "Agreement(s) for Sale of IBM Machines" or any other IBM transaction. The court found, perhaps it was tacitly agreed by the parties, that the transactions involved "constitute bona fide payments * * * for the use or rental of its various office and business machines" and so there is no problem or question here of a tax evasion device. By this "Agreement for IBM Machine Service," IBM "agrees to furnish to the Customer, * * * its IBM Machine Service comprising the *use of the below listed machines and devices* manufactured and *to be kept in good working order by IBM*." Following this printed provision is a space for the inserted description of the machine or device including a space for noting *"Monthly Charge Each."* On a second page or reverse side the printed agreement provides that it is effective and "shall remain in force * * * for *one year* from the date the first machine is installed * * and may be *terminated* by either party then, *provided written notice is received three (3) months prior.*" And, "Thereafter it may be terminated * * * by either party at the end of any calendar month" on three months' notice. There is a detailed provision with respect to the *"monthly charges"* and they provide for the use of the machines "by only one shift of clerks," use by more than one daily shift calls for an additional charge. Also added to the specified charges are "any taxes, however designated, levied or based on such charges or on this Agreement or the machines or their use, including state and local privilege or excise taxes based on gross revenue * *." *IBM* agrees, however, *to pay "personal property taxes assessed on the machines* and taxes based on net income." There are further provisions relating to additional machines, cards and tape, maintenance, alterations and attachments as well as provisions for the customer's paying drayage charges.

(Italics supplied in quoting from the agreement.)

The state does not contend, apparently, that IBM's dealings under these agreements are not as a matter of fact rental or lease transactions. The sales tax act defines a "sale at retail," as far as material here, as "any *transfer* made by any person engaged in business as defined herein *of the ownership of, or title to,* tangible personal property to the purchaser, *for use or consumption* and not for resale in any form as tangible personal property, for a valuable consideration; * * *." (Italics supplied for emphasis.) V.A.M.S. § 144.010, subd. 1 (8). Without specific regard to the stipulated written agreement the state seizes upon the italicized language and urges that "Respondent's rental transactions are transfers of the 'ownership of' tangible personal property and as such are retail sales" within the meaning of the act. It is said that IBM's "rental transactions grant the right to continuous possession or use of business machines and thus they transfer the 'ownership of' tangible personal property" as defined in a "sale at retail." For these reasons it is urged therefore that there is a plain legislative intention "to tax these rental transactions." In addition, in support of its argument, the state invokes certain auxiliary rules of statutory construction and what is said to have been the administrative interpretation of the act over the years.

To further precisely delimit the issues involved upon this appeal it is well at this juncture to note the contentions and concessions made by IBM. In the first place, IBM insists that this appeal may not be decided upon the basis of generalities of either law or fact, that a mere advisory or abstract opinion is neither sought nor involved, and that the case "must be decided on the record and the facts in this case." In the second place, IBM concedes, at least tacitly, that certain leases or rentals of certain types of property could be "continuous" or so transfer the "use" or "possession" for "consumption" as to thus in point of fact constitute a retail sale in the guise of a rental. It is urged, however, that "these agreements do not contain the factual elements which would justify their treatment as if they were (retail) sales" and therefore subject to the tax. IBM contends that in the stipulated circumstances the legislature "intended to tax retail sales which it equated to transfer of title or ownership" however accomplished, but that it recognized bona fide rental transactions and the fact that they are not subject to the sales tax. IBM likewise invokes the auxiliary rules of statutory construction and administrative interpretation over the years.

With the issues thus further and plainly delimited, it is not necessary to review and carefully distinguish the cited cases. Some of them illustrate the conceded principle that some rental transactions may in fact be "retail sales" or so transfer possession or use as to constitute sales at retail and some of the statutes specifically taxed rental transactions as sales. Ford Car Leasing Co. v. Oklahoma Tax Comm. (Okl.) 285 P.2d 436; Young Electric Sign Co. v. Utah State Tax. Comm., 4 Utah 2d 242, 291 P.2d 900, and Herbertson v. Cruse, 115 Colo. 274, 170 P.2d 531, the latter case annotated in 172 A.L.R. 1317, "What transactions constitute a 'sale' within operations of sales tax law provision defining a sale as including a transfer of possession, license to use, or words to that effect." The precise delimitation of the issues involved virtually determine the essential merits of this case and it is only necessary to bear in mind certain generalities with respect to sales tax acts. Each state employs its own definitions, particularly of "sales at retail," and in general these statutes enlarge upon both the dictionary and common acceptation of the term and thus may tax a variety of particular dealings and transactions. 47 Am.Jur. (Sales and Use Taxes), Secs. 22–25, pp. 227–229; annotation "What amounts to a sale at retail," 139 A.L.R. 372, and the collection of leading articles in 9 Vanderbilt L.R. 121, 227.

As indicated, in the delimited circumstances of bona fide rental transactions and in view of the plain implication of unambiguous statutes, it is not necessary to resort to the auxiliary rules, some consideration of the statute alone is sufficient to resolve the problems of this appeal. In the first place, the statutes do not in terms define rental or lease transactions as "sales at retail." In addition to defining a sale at retail the statute, V.A.M.S. § 144.010, subd. 1(8), specifically provides that the term "shall be construed to embrace" certain specified transactions, some or all of them in the nature of rental or lease transactions. These embraced transactions are all enumerated subdivisions of subsection (8) which defines "sale at retail." V.A.M.S. § 144.010, subd. 1(8). For example, subdivision (8) (a) embraces "Sales of admission tickets, cash admissions, charges and fees to or in places of amusement, * * * games and athletic events." And in (8) (c) the definition of retail sale includes "Sales of service to telephone subscribers * * * and the sale, *rental or leasing of all equipment* or services pertaining or incidental thereto." In subdivision (8) (e) a retail sale embraces "charges for all rooms * * * furnished at any hotel, * * * dining car, tourist camp," and (8) (f) embraces the sale of tickets for railroad and sleeping car seats and bus tickets for the transportation of persons. These definitions embrace rental transactions in some senses or meanings and of course as to telephone service a retail sale in express terms includes the "rental or leasing of all equipment or services"—an instance in which eventually the rental charges far exceed the value of the thing rented. In the following section, 144.020, when the 2% sales tax is levied and imposed, the distinctions in these definitions is continued and followed. There is a 2% tax "for admission and seating accommodations," a 2% tax on telephone service and "the sale, rental or leasing of all equipment or services pertaining or incidental thereto," a tax on charges for hotel rooms and bus and railroad tickets. V.A.M.S. § 144.020, subd. 1(2), (4), (6), (7).

In short, had the legislature desired or intended to impose a sales tax on any and all lease transactions it would have been a very simple matter to plainly manifest that purpose by express provision in the act. By carefully defining "sale at retail" and purposefully embracing in the definition and the tax certain rental-type transactions, it would appear that other rentals and leases were not embraced. In the strictly limited circumstances of this record and these particular rental transactions by IBM the statutes are unambiguous and do not either expressly or by plain implication subject these transactions to the 2% sales tax.

■ As to the second problem, the period of time for which a refund may be claimed, the auxiliary rules of statutory construction have some force. The sales tax act, since 1939 and through three amendments, has provided for refunds of taxes erroneously or illegally collected, provided however that "no such credit or refund shall be allowed unless duplicate copies of a claim for refund are filed *within one year* from the date of overpayment." V.A.M.S. § 144.190(2). In 1951 the general laws governing the Division of Collection, State Revenue Department, were amended and a new provision added, Laws Mo.1951, p. 866. The new provision also authorizes the director of revenue to credit and refund erroneous collections or payments "of any tax" from funds appropriated for that purpose, provided that "No refund shall be made by the director of revenue unless a claim for refund has been filed with him *within two years* from the date of payment." V.A.M.S. § 136.035(3). The state, of course, relies on section 144.190(2) of the sales tax act and contends that any claim for sales tax payments not made within one year is barred. On the other hand, IBM relies on section 136.035(3) and insists that under the law relating to the director and all taxes collected by him it had two years in which to file a claim or as here make a claim for payments made over a two-year period.

IBM says that section 136.035(3) is a general statute covering the same subject pro-

vided for in section 144.190, that 144.190 is a special statute and therefore there is an obvious legislative intent that the general statute displace the operation of the special statute. This particular rule and its applicability is illustrated by Schott v. Continental Auto Ins. Underwriters, 326 Mo. 92, 31 S.W.2d 7, the case emphasizing, however, that where appropriate "the question being always one of intention." The state relies upon the rule that "where there are two laws relating to the same subject they must be read together and the provisions of the one having a special application to a particular subject will be deemed to be a qualification of, or an exception to, the other act general in its terms." Eagleton v. Murphy, 348 Mo. 949, 953, 156 S.W.2d 683, 685–686, 138 A.L.R. 749; Veal v. City of St. Louis, 365 Mo. 836, 289 S.W.2d 7; State v. Chadeayne, (Mo.App.) 313 S.W.2d 757. But this rule too is one of statutory construction and necessarily "always one of legislative intention." Fleming v. Moore Bros. Realty Co., 363 Mo. 305, 251 S.W.2d 8, 15. And in this connection both parties rely on Kleban v. Morris, 363 Mo. 7, 247 S.W.2d 832, and Hern v. Carpenter, (Mo.), 312 S.W.2d 823, as indicating or holding that, despite section 136.035, section 144.190 provides the exclusive method of recovery of sales taxes. As to the latter decision IBM says, "There is no discussion or independent consideration of the question in the Hern case and it does not stand for the point which is not necessary to the Hern decision."

■ It is not necessary to a disposition of this phase of the appeal to undertake an explanation of these cases or a reconciliation of these rules. The requirement that claims for refund or credit must be "filed within one (1) year from date of overpayment" (Laws Mo.1941, p. 708) is a part of the sales tax act and therefore specifically applicable to sales taxes. Section 136.035 applies to the director of revenue and "any tax which the state is authorized to collect." This language is broad enough to embrace sales taxes, but in addition to sales taxes the director collects a large number of other taxes. Then too, supporting the view that by this general statute there was no legislative intention to repeal by implication only the special statute, is the obvious fact that the general law in its title or otherwise did not purport to amend or modify section 144.190, that section is not mentioned. Laws Mo.1951, p. 866. There may be many reasons, either practical or of policy, for specifically requiring that claims for refunds of sales taxes be filed within one year and at the same time permitting refunds of other taxes after two years. Supporting this view is another auxiliary rule of statutory construction that repeals by implication are not favored. Fleming v. Moore Bros. Realty Co., supra.

■ In addition there is the rather firmly fixed rule that "On grounds of public policy, the law discourages suits for the purpose of recovering back taxes alleged to be illegally levied and collected." 51 Am.Jur. (Taxation), Sec. 1167, p. 1005. And it is for this reason of policy that the remedy of a refund, including the time in which it must be filed is the exclusive remedy. 51 Am.Jur., Secs. 1168–1174, pp. 1006–1010; 84 C.J.S. Taxation § 633, p. 1269; annotation 163 A.L.R. 778. In part the reason for this rule of policy may be illustrated by this case. The parties have tried the case on the assumption if not the agreement that if these particular taxes for rental transactions were illegally or improperly collected that IBM has the right to maintain this proceeding to recover them. 51 Am.Jur., Sec. 1174–1175, p. 1010; 84 C.J.S. Taxation § 639d, p. 1300. It was stipulated by the parties (and there may be some reason for it unknown to the court) that "The records of the Department of Revenue indicate that IBM had paid Sales Tax to the State of Missouri on its machine rental charges in accordance with the provisions of the 1946 agreement" and of course that agreement includes the two years involved here, 1957 to 1959. The fact may be as stipulated, that IBM paid these taxes, but if it has not, of course, any

sum recovered in this proceeding would indeed be a windfall, unless IBM proposes to redistribute any sums collected to its customers. The sales tax act levies a 2% tax upon the retail sale and by express provision it is the duty of the purchaser to pay the tax to the seller (V.A.M.S. § 144.060) and it is the duty of the seller to collect the tax and account for it to the director of revenue. V.A.M.S. § 144.080. Furthermore, the stipulation and claim that IBM has in fact paid these taxes is contrary to the express provisions of its rental contract in which the lessee customer agrees to pay all taxes except personal property and income taxes which IBM agrees to pay. IBM pointed to this fact and to these provisions to establish that these transactions were not in fact retail sales. Nevertheless, for the purposes of the appeal the stipulation and theory upon which the case was tried and submitted is accepted. But these reasons of policy plainly indicate that there are good and sufficient reasons for limiting the remedy, particularly the time in which claims for refunds of sales taxes must be made. For these reasons and in this view IBM is not entitled to a refund of any taxes not claimed "within one year from date of overpayment" as provided in the sales tax act. V.A.M.S. § 144.190(2).

■ In addition to the principal sum involved the court's judgment directed that the sum refunded be paid "with interest from date of payment at the rate of six per cent." In general it may be said that there are conflicting views as to the "Right to interest on tax refund." Annotations 57 A.L.R. 357, 76 A.L.R. 1012, 112 A.L.R. 1183. But IBM has simplified this phase of the appeal by tacitly conceding, or not arguing with convincing seriousness, that in this jurisdiction interest is not allowable on tax refunds in the absence of specific statutory authorization. As the court said in a suit to recover a merchant's license, "interest eo nomine is a creature of statute, to the terms of which we must look for authority for its imposition. This is peculiarly true in its application to liabilities of the state and its governmental agencies." Simmons Hardware Co. v. City of St. Louis, (Mo.) 192 S.W. 394, 398. Admittedly, there is no provision in the sales tax act for the payment of interest on refunds. IBM points to a provision in the use tax law which provides for appeals and judicial review of decisions, findings and orders of the director of revenue. In that statute there is a provision that if judgment is entered for the plaintiff and there is a balance due after credits for taxes "interest shall be allowed at the rate of six per cent per annum upon the amount found to have been illegally collected." V.A.M.S. § 144.685(2). But as with the merits of the claim it is neither desirable nor necessary to attempt an interpretation of any tax law other than the one involved here, the sales tax act. As to sales taxes improperly collected there is a provision for refund but there is no provision that refunds bear interest. As with the principal claim, there is a public policy against refunds for taxes, "interest eo nomine is a creature of statute." On the other hand, the state does not contest the allowance of interest under the general law on the judgment itself, "Interest shall be allowed on all money due upon any judgment or order of any court, from the day of rendering the same until satisfaction be made by payment * * *." V.A.M.S. § 408.040.

The judgment is reversed and the cause remanded to the end that a judgment consistent with this opinion may be entered.

BOHLING and STOCKARD, C.C., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All of the Judges concur.