TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, and ST. LOUIS BELT & TERMINAL RAILWAY COMPANY, a Corporation, Respondents, v. CITY OF BRENTWOOD, a Municipality, Appellant, No. 41604—230 S. W. (2d) 768.

Division One, June 13, 1950.

*Malcolm L. Bartley* for appellant.

*Warner Fuller, William A. Thie* and *Arnot L. Sheppard* for respondents.

HYDE, J.—Declaratory judgment action ·to determine whether, (under the provisions of Sections 7530-7535, R. S. 1939, Mo. R. S. A.), a railroad may be compelled to construct the portions of a sanitary sewer system (organized under authority of Sections 7181-7182, R. S. 1939, Mo. R. S. A.) proposed across its right of way. The trial court declared that it could not be compelled to do so and the City has appealed from this decree. · We have jurisdiction because the cost to the railroad would be more than $7500.00.

The material facts have been stipulated by the parties. Brentwood is· a City of the fourth class and has established the sewer district by ordinance under the authority of Sections 7181-7182. It is necessary to tunnel under the tracks, owned or operated by the railroads, in three places, to construct the proposed sewer system. The railroads contend, as the trial court held, that the provisions of Sections 7530-7535 apply only to sewers for drainage of surface water and do not apply to sanitary sewers authorized by Sections 7181-7182. The City concedes that Sections 7530 and 7531 apply only to drainage sewers, but contends there is broader language in Sections ·7532 and 7533 which authorizes the same procedure for all types of sewers.

These sections are all part of the same Act adopted in 1909. (Laws 1909, p. 364.) Section 1 thereof (now 7530)· establishes the following duty of railroads: "to construct at their own expense, within the corporate limits of such village, town or city along the lines of their said railroads or railroad right of way, such sewers as shall be of sufficient capacity to at all times carry off· all .the

surface water that may collect or accumulate along their right of way."

Section 2 (now 7531) stated the manner of construction of such sewers and required they "shall be of sufficient volume and depth to carry off at all times all surface water, ▮▮▮ with such facility as to prevent at all times an overflow therefrom." These specifications (making requirements for wagon and foot crossings) show that open drains were intended.

Section 3 (now 7532) upon which the City relies, emphasizing the italicized words therein, is as follows: "It shall be the *further duty* of all such persons, companies and corporations to construct under their railways, from one side of their right of way to the other, *such sewers* as shall by the city council, board of aldermen or legislative body of such villages, town or cities be deemed *necessary to facilitate the proper drainage* of such village, town or city as provided herein."

Section 4 (now 7533) also relied on by the City, emphasizing the italicized words therein, commences thus: "Whenever any such village, town or city shall, by ordinance, deem it necessary to construct *any public or district sewer,* it shall, * * * cause its civil engineer * * * to file plans * * * with the clerk of such village, town or city." This section further provides for service of such plans upon the railroad. The last three sections of the Act (now 7534, 7535, 7536) provide a penalty for failure of the railroad to construct the section of a proposed sewer across its right of way and impose liability for damage from overflow due to its failure to comply with the Act.

The City contends the above italicized words "further duty", "such sewers" and "necessary to facilitate the proper drainage" in Section 7532 and "any public or sewer district" in Section 7533 shows an intent to make the duty of the railroad apply to sewers of any type. However, it would seem that the reference to "drainage" of towns in Section 7532 is against the City's contention. The City cites definitions of the word "sewer" in Fuchs v. City of St. Louis, 167 Mo. 620, 67 S. W. 610; Anselmi v. City of Rock Springs, (Wyo.) 80 Pac. (2d) 419, 116 ALR 1250 to show that it may apply to either sanitary or drainage sewers. The Fuchs case involved tort liability for a gas explosion, and while it contains a broad definition of the word "sewer" it is not in point on the facts of this case. In the Anselmi case, the Court held against the contention that the word "sewer" did not include storm sewers but did so because it found nothing "in the Constitution or the statutes of this State which would limit the term to sanitary sewers."

The City's contention raises the question as to whether the general reference to sewers in Sections 7532-7533 at least makes them ambiguous as to the type of sewers meant to be included. However,

it is a well established rule of statutory construction that specific designations will control over general terms. We have stated this rule as follows: "Where general terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part the particular provisions must govern, unless the statute as a whole clearly shows the contrary intention and they must be given effect notwithstanding the general provision is broad enough to include the subject to which the particular provisions relate." (Jacoby v. Missouri Valley Drainage District, 349 Mo. 818, 163 S. W. (2d) 930, 938; see also State ex rel. Garesche v. Roach, 258 Mo. 541, 167 S. W. 1008; State ex rel. McKittrick v. Wilson, 350 Mo. 486, 166 S. W. (2d) 499.) Since these sections (7530-7536) were all part of a single Act, we think they must be read and construed together. So considered, we think they all apply only to drainage sewers and that it was drainage of storm and surface water for which the Act was intended to provide.

There were only two sections of the Act specifically imposing duties as to construction of sewers, namely: Section 1 (7530) imposing the duty of providing sufficient drainage along the right of way of a railroad in a town; and Section 3 (7532) imposing the further duty of providing drainage of other parts of a town by constructing sewers from one side of the right of way to the other to connect sewers deemed necessary (by the town council) to facilitate the proper drainage of the town. Both of these sections alike (as do the two final ▇▇▇ sections of the Act) show concern with drainage of water which might be obstructed by the railroad and overflow private property. Section 4 (7533) only provides the method by which the railroad shall be notified as to the size and kind of sewer, which it will be required to connect across its right of way; and this means drainage sewer because the words "to facilitate the proper drainage of such town", in the preceding section (7532), must be read into this section to show the type of sewers to which it refers. Drainage is the obvious subject of all these sections and, in view of all these specific references to drainage, we do not think that the Act can reasonably be construed as referring to any other type of sewer. Sanitary sewers are much more complicated and costly systems and, if the Legislature had intended to include duties concerning them, we think something more than drainage would have been mentioned.

This construction seems clearer when we consider Sections 7181 and 7182, authorizing the Board of Aldermen of cities of the fourth class to establish public and district sewers for sanitary purposes, and to pay for them by special assessments, and Section 7367, R. S. 1939, Mo. R. S. A., making rights of way and other real property of railroads in any town subject to special assessments for public improvements made by the town "in the same manner and to the same extent in all respects as the real property of any other person or

corporation therein.'' Thus it appears that provisions were made for sanitary sewers which were complete in themselves and which were in effect before the 1909 Act was adopted. (See Laws 1895, p. 65; Laws 1907, p. 92.) It seems plain that the 1909 Act was not adopted to change the situation as to sanitary sewers but to make adequate provisions for drainage of surface water which might be accumulated along or be obstructed by railroad structures and thereby to facilitate the proper drainage of towns. We, therefore, hold that these railroads cannot be compelled to construct the proposed sanitary sewers across their rights of way and under their tracks.

The constitutionality of these sections is also raised by the railroads but, in view of the above construction, it is not necessary to consider this contention.

The judgment is affirmed. All concur.