**FEDERHOFER, INC., Hertz Corporation, Leased Vehicles, a corporation, and Ryder Truck Rental, Inc., Respondents,**

v.

**M. E. MORRIS, Director of Revenue of the State of Missouri, and Albert S. Arenson, Collector of Revenue of the State of Missouri, Appellants.**

No. 49169.

Supreme Court of Missouri,

Division No. 2.

Feb. 11, 1963.

Thomas F. Eagleton, Atty. Gen., Eugene G. Bushmann, Robert D. Kingsland, Asst. Attys. Gen., Jefferson City, for appellants.

Warren D. Welliver, Columbia, Richard K. Nalley, St. Louis, for respondents, Welliver, Porter & Cleaveland, Columbia, of counsel.

STOCKARD, Commissioner.

In this suit for a declaratory judgment the trial court held certain transactions for the lease or rental of motor vehicles and equipment not subject to the Missouri State Sales Tax Law, Sections 144.010 to 144.510 inclusive (all statutory references are to RSMo 1959, V.A.M.S.), and not subject to the Compensating Use Tax Law, Sections 144.600 to 144.745 inclusive. The Director of the Department of Revenue and the Collector of Revenue for the State of Missouri have appealed.

The facts are brief, undisputed and are set forth in a stipulation agreed to by the parties and stated to "constitute all matters required by this court for the determination of the issues." It is there stated that respondents are corporations authorized to do business in the State of Missouri and that they are presently engaged in the business of renting and leasing automobiles and trucks in this state; that "The Director of Revenue has determined that the vehicles leased or rented under the contracts [copies of which are identified in the stipulation and introduced in evidence] are taxable tangible personal property and that the total consideration paid by lessees to [respondents] for the rental of such vehicles is subject to sales and use taxes;" and that "the Director of Revenue has required that the lessors of vehicles leased pursuant to those contracts * * * collect sales and use taxes, in accordance with Chapter 144 * * * [RSMo 1959, V.A.M.S.] from the lessees of such vehicles, and remit the amount collected to the [appellants]."

The contracts used by respondents in renting or leasing vehicles all contain different wording and we cannot set out the lengthy terms of each. Exhibit B, the form of contract used by Federhofer, Inc., is typical, and we do not understand that appellants place any significance on the wording of any particular contract. In the Federhofer form of contract the lessor "agrees to rent and the lessee agrees to hire" certain described motor vehicles "with the understanding and agreement that the title and ownership of the said vehicles shall remain in the lessor, and the accessories and equipment of each of said vehicles and all additions to each vehicle shall become and remain a part of the respective vehicle to which attached." The term of the lease is from "the delivery date" and continues in effect, "unless cancelled as provided * * * for a period of one year and from year to year thereafter;" provided that either party may cancel the agreement as to any one or more vehicles at any time after one year. However, each vehicle leased has a "minimum replacement date" at which time, if the agreement has not previously been canceled as to it, the vehicle is to be replaced with "a new vehicle of similar size and type" at the expense of the lessor and a new "lease rate * * * shall be arrived at by mutual agreement." In the event the lessee cancels the lease, "the lessee shall purchase for cash each vehicle so cancelled." The "purchase price" is then defined to be "the aggregate sum of the original value of the vehicle * * * less a sum for depreciation, computed at [an agreed] depreciation rate per month," with the further provision that in no event shall the purchase price be less than a stated percentage of the original value. An option to the requirement to purchase is provided, and the lessee may surrender the vehicle to the lessor for sale by it, and then pay the difference, if any, between the net sale price of the vehicle and lessee's purchase price as computed pursuant to the lease agreement. However, in the event of a war or national emergency, the lessor has the right to elect to have the vehicle returned to it upon cancellation of the agreement by either party even though the lessee should want to purchase it. In the event of bankruptcy or assignment for the benefit of creditors on the part of lessee, the lessor may repossess the vehicle. The lessor may cancel the contract and agreement "without cause at any time after one year" by giving to the lessee thirty days written notice of the election to do so, and in that event the lessee is granted the privilege and option to purchase the vehicle on the terms which would apply if the lessee elected to cancel, but if the lessee elects not to purchase, the vehicle shall be delivered to the lessor. It also agrees to "maintain the said vehicles in good repair in all respects, and to make repairs within a reasonable time upon return of the vehicles to the garage [designated by lessor]; to furnish all tires, gasoline, oils and lubricants necessary for the operation of said vehicle; to furnish storage space together with complete garage service for the said vehicles, including the washing and cleaning of said vehicles."

When necessary the lessor may "temporarily substitute other vehicles." Lessee is liable to lessor for certain expenses resulting from improper use, such as overloading and operating the vehicle on a flat tire. The lessor agrees to keep the vehicles insured against loss by fire or theft, and "to make application for and attempt to keep in force" insurance protecting lessee against public liability and property damage in amounts agreed to. Lessee must notify lessor immediately of all accidents and the lessor has the right to determine disposition of the vehicle if wrecked. Other provisions of the contract pertain to illegal use, and other matters. Payments by lessee for the use of the vehicle are to be made at regular intervals on a previously agreed to plan and rate, and the rate is based on mileage and time of use.

As we understand the contention of appellants, they do not take the position that the agreements do not constitute valid leases of the motor vehicles. Their position is that the legislative definition of the transactions which are subject to the sales and use taxes includes the transactions provided for in these agreements even though they provide for a valid lease or rental of the vehicle, and that the entire amount paid periodically by lessees to the lessors as rental for the use of the vehicles is subject to either the sales or use tax. On the other hand, it is respondents' contention that the rental or lease of the vehicles pursuant to the agreements do not constitute taxable events under either the sales or compensating use tax acts. They apparently concede, however, that the transactions by which they purchase the vehicles are subject to the sales tax or to the Motor Vehicle Use Tax, depending upon the circumstances, and that when the vehicles are sold to the lessee, if they ever are, or to some third person, those transactions are subject to either the sales tax or the Motor Vehicle Use Tax if otherwise applicable. We shall examine first the contention of appellants that the transactions made pursuant to the contracts are subject to the sales tax.

Section 144.010, subd. 1 is devoted to the definition of "words, terms and phrases," and in subsection (8) thereof the term "Sale at retail" is defined to be "any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration; * * *." It is then provided that "Where necessary to conform to the context of sections 144.010 to 144.510 and the tax imposed thereby, it [the term "sale at retail"] shall be construed to embrace" six described transactions pertaining to specifically stated items of property or services, most of which would not be considered to constitute a transfer of the ownership or title to tangible personal property, and "some or all of [which are] in the nature of rental or lease transactions." International Business Machines Corporation v. The State Tax Commission of Missouri, Mo., 362 S.W.2d 635, 639. In fact, the definition of one of the transactions expressly includes the "rental or leasing" of telephone equipment. Specifically, these six transactions pertain to "Sales of admission tickets * * * to or in places of amusement, entertainment and recreation, games and athletic events;" "Sales of electricity, electrical current, water and gas * * *;" "Sales of service to telephone subscribers * * * and the sale, rental or leasing of all equipment or services pertaining or incidental thereto;" "Sales of service for transmission of messages by telegraph companies;" "Sales or charges for all rooms, meals and drinks furnished at any hotel, tavern, inn, * * *" and other similar places; and "Sales of tickets by every person operating a railroad, sleeping car, * * * and certain other facilities." Following the section pertaining only to the definition of "words, terms and phrases," there is Section 144.020 which imposes an excise tax of two per cent upon seven separately enumerated and described transactions, the first of which is "every retail sale in this state

of tangible personal property." The remaining six transactions upon which the two per cent excise tax is imposed are the precise transactions described in the six subdivisions of Section 144.010 subd. 1(8), and which by legislative definition are "embraced" within the meaning of the term "sale at retail."

■ Appellants seize upon the language used in the definition of a "sale at retail" as including "any *transfer* * * * *of the ownership of*, or title to, tangible personal property *for use* or consumption and not for resale in any form as tangible personal property, for a valuable consideration; * * *." (Italics added). The specific point in their brief is that the transactions made pursuant to the lease agreements are subject to the two per cent sales tax because (a) they "provide for the transfer of the 'ownership of' tangible personal property," (b) they "transfer the right to continuous possession or use," and (c) they "are closed transactions constituting a sale." In International Business Machines Corporation v. State Tax Commission of Missouri, Mo., 362 S.W.2d 635, this court recently had before it the question of whether certain transactions, whereby International Business Machines Corporation rented or leased business machines, constituted taxable events which resulted in the rental payments being subject to the two per cent sales tax. Reasons (a) and (b) advanced by appellants in this case were advanced by the State Tax Commission in the previous case in identical or equivalent language, and the authorities cited in support of these two contentions in each case are precisely the same. After setting out and discussing the applicable provisions of the statutes, it was stated in the previous case that "the statutes do not in terms define rental or lease transactions as 'sales at retail,' " and it was held that "had the legislature desired or intended to impose a sales tax on any and all lease transactions it would have been a very simple matter to plainly manifest that purpose by express

provision in the act." It was then concluded that "By carefully defining 'sale at retail' and purposefully embracing in the definition and the tax certain rental-type transactions, it would appear that other rentals and leases were not embraced." It is thus evident that in the International Business Machines Corporation case this court has ruled, and we are convinced correctly, the precise issues presented and the contentions made by appellants in this case by what we have designated as their reasons (a) and (b). We see no occasion for further discussion of these two contentions which could consist of no more than a restatement of the views previously set forth. We necessarily conclude that the trial court did not err, for reasons (a) and (b) advanced by appellants on this appeal, in ruling that the rental or lease transactions of motor vehicles made pursuant to the contracts used by respondents are not subject to the sales tax.

In support of reason (c) advanced by appellants, which was not presented in the International Business Machines Corporation case, they cite Section 144.010, subd. 1(7) which provides that the term "sale" or "sales" includes "installment and credit sales, and the exchange of properties as well as the sale thereof for money, every closed transaction constituting a sale, and means any transfer, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for valuable consideration and the rendering, furnishing or selling for a valuable consideration any of the substances, things and services herein designated and defined as taxable under the terms of sections 144.010 to 144.510." Appellants' argument as to this subsection of the statute may be stated as follows: (a) the contractual obligation or right of the lessees to purchase the vehicle in the event of cancellation of the lease by the lessee "should bring these contracts within the concept of what the statute considers to be 'closed transactions' constituting a sale," and (b) since conditional sales agreements

constitute "sales" within this statutory definition it is inconsistent to hold that the leases do not constitute sales merely because "the installment payments are called rental payments."

We have taken up appellants' contentions in the order presented, but it is evident that if rental or lease transactions under consideration do not constitute "sales" as legislatively defined, they cannot constitute "sales at retail," and the discussion of reason (c) properly should have preceded the discussion of reasons (a) and (b). However, in any event, the lease agreements of respondents do not constitute an installment sale, and they do not constitute a "closed transaction constituting a sale;" they are what they clearly appear to be, an agreement to lease with the right to purchase which when and if exercised constitutes a sale. They cannot constitute a "closed transaction constituting a sale" when the right not to purchase exists and when the duty to sell is not absolute. Appellants assume, without any attempt to justify the assumption, that the payments for the use of the vehicle under the lease agreements constitute "installment payments." The purchase price of the vehicle is never paid, nor is the title or right to title of the vehicle ever acquired, by reason of the lessees making the rental payments, and the purchase price of the vehicle to the lessee, if it is purchased, is not affected by or based on the amount of the rental payments previously made or agreed to be made. The statutory definition of "sale" or "sales" relied on by appellants does not result in the transactions made pursuant to the rental or lease agreements of respondents being taxable events for the application of the sales tax.

■ Appellants next assert: "Respondents' motor vehicle lease contracts provide for the acquisition of the ownership of, or title to, tangible personal property through a sale and are subject to the Missouri Use Tax Law." The scope of this contention is by no means clear. It appears

from the language of the point that it is contended that the transactions are subject to the use tax in any and all events. We need not attempt to analyze further this contention to arrive at its precise limits. Section 144.610, the use tax imposing section, provides for a use tax on "storing, using or consuming within this state any article of tangible personal property purchased * * *." Section 144.605(8) defines, for use tax purposes, "tangible personal property" to be "all items subject to the Missouri sales tax as provided in subdivision (1) and (3) of section 144.-020." We have held that the lease or rental of motor vehicles pursuant to the contracts of respondents do not constitute taxable events under Section 144.020, subd. 1(1), which imposes a sales tax upon "every retail sale in this state of tangible personal property." Subdivision (3) of Section 144.020, subd. 1 applies only to sales of "electricity or electrical current, water and gas." Therefore, the statute which imposes a use tax does not include the rental or lease transactions of respondents under consideration in this case. In addition, appellants make no comment on or attempted explanation of Section 144.615(4) which provides that there is "specifically exempted" from the Compensating Use Tax Law "Motor vehicles subject to the motor vehicle use tax." This exemption extends to the motor vehicle, not just to certain transactions pertaining to the motor vehicle, and it is respondents' contention throughout this litigation that the motor vehicles rented or leased pursuant to their contracts are subject to Section 144.440, the motor vehicle use tax, if required by reason of their use to be licensed in this state. The burden is on appellants on this appeal to show that the transactions made pursuant to the lease and rental contracts are taxable events under the Compensating Use Tax Law, and they have not done so.

For the reasons stated the judgment of the trial court is correct, and therefore it is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.