**GREENBRIAR HILLS COUNTRY CLUB, Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent.**

No. 78923.

Supreme Court of Missouri,
En Banc.

Dec. 17, 1996.

Harvey M. Tettlebaum, Jefferson City, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Evan J. Buchheim, Assistant Attorney General, Jefferson City, for Respondent.

COVINGTON, Judge.

The issue presented in this case is whether Greenbriar Hills Country Club (Greenbriar)

owes sales tax on a flat monthly amount that it charges its members as a service charge, a fixed gratuity for its food and beverage staff. The Administrative Hearing Commission (AHC) concluded that Greenbriar's service charges are subject to sales tax. The decision of the AHC is reversed.

The relevant facts are not in dispute. Greenbriar is a country club located in Kirkwood, Missouri. It provides recreational and dining facilities to its members and their guests. It is organized and operated pursuant to chapter 355, RSMo 1994, as a not-for-profit corporation. Greenbriar is exempt from federal income tax as a club organized for pleasure, recreation, and other non-profitable purposes pursuant to section 501(c)(7) of the Internal Revenue Code of 1986, as amended. It operates for the benefit of its members as a cooperative association.

Greenbriar paid sales tax on its purchases of food and beverages. Greenbriar did not permit tipping of its employees at any time pertinent to the issues in this case. Greenbriar billed its members for a monthly service charge in the amount of $35.00 to cover tipping on food and drink services at its dining facilities. The service charge was used exclusively to provide tips to Greenbriar's food and beverage staff. The amounts collected for the service charge approximated the charge that would have been collected by Greenbriar if a twenty-percent service charge had been imposed on members for general food and drink sales. Greenbriar separately stated the service charge on the monthly bills sent to its members.

On April 1, 1994, the Department of Revenue sent to Greenbriar assessments asserting a sales tax liability, plus additions to tax and interest, against Greenbriar for the periods commencing on September 1, 1990, and ending on August 31, 1993, in the aggregate amount of $48,797.45. The assessments are based on the Director's determination that the service charge to cover tipping is subject to Missouri sales tax. On June 16, 1994, Greenbriar paid the assessments under protest to the Director. On July 11, 1994, Greenbriar filed with the Director a sales/use tax protest payment affidavit. The Director denied the protest. Greenbriar filed a complaint with the AHC contesting the Director's denial of Greenbriar's protest.

The AHC held that sales of meals by private clubs that are places of amusement, entertainment, or recreation are subject to sales tax. The AHC went on to hold that, because its decision unforeseeably overruled a prior regulation,[1] Greenbriar was not liable for the assessments. Greenbriar filed its petition for judicial review with this Court.

■ Determination of the issue of whether the service charge is subject to sales tax requires construction of parts of section 144.020, RSMo 1994,[2] set out in pertinent part as follows:

1. A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state. The rate of tax shall be as follows: ...

(2) A tax equivalent to four percent of the amount paid for admission and seating accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events; ...

(6) A tax equivalent to four percent on the amount of sales or charges for all rooms, meals and drinks furnished at any hotel, motel, tavern, inn, restaurant,

---

**1.** Regulation 12 CSR 10–3.048(7)(8) provides:

(7) If a club regularly serves food and beverages to the public, all sales are subject to sales tax on the amount of gross receipts. If a club does not regularly serve food and beverages to the public, other than its members and their guests, and the club acts as a cooperative association for the benefit of its members, the club has the option of either collecting and remitting sales tax on its sales to members and guests or paying sales tax on the club's purchases of food and beverages. (See section 144.020.1(6), RSMo.).

(8) Involuntary or mandatory gratuities or service charges on food or beverage sales at clubs retain the same character as the underlying sale of food and beverages.

Greenbriar relied upon the regulation. During the proceedings below, however, the Director repudiated the regulation.

**2.** Unless otherwise noted, all statutory references are to RSMo 1994.

eating house, drugstore, dining car, tourist cabin, tourist camp or other place in which rooms, meals or drinks are regularly served to the public. . . .

The parties rely upon different subdivisions of subsection 1 of section 144.020 in support of their respective positions. The essence of the Director's argument is that Greenbriar's service charge constitutes a fee or charge paid in or to a place of amusement so as to be taxed under subdivision (2) of section 144.020.1. The Director cites *L & R Distributing Inc. v. Missouri Department of Revenue* for the proposition that a country club is a place of amusement. 529 S.W.2d 375, 378 (Mo.1975). The Director further argues that the service charge is a "fee or charge" within the meaning of 144.020.1(2).

The essence of Greenbriar's argument is that its service charge constitutes part of its charge for meals and drinks; therefore, the taxability of these charges is to be determined by reference to section 144.020.1(6). By negative implication, Greenbriar contends, section 144.020.1(6) excludes from sales tax meal sales by any place that does not regularly serve the public. Because Greenbriar does not serve the public, its service charge is not taxable under 144.020.1(6).

■ Upon the facts to which the parties stipulated in this case, this Court agrees with Greenbriar. The parties stipulated that Greenbriar serves meals and drinks to its members and guests, but not to the public. The parties also stipulated that the service charge at issue is used exclusively to cover tipping for food and beverage services. It follows that the service charge is part of Greenbriar's charge for meals and drinks. *See Oakland Park Inn v. Director of Revenue*, 822 S.W.2d 425, 426 (Mo. banc 1992). Section 144.020.1(6) taxes the charge for meals and drinks served by any place that regularly serves the public. Consequently, under the well established rule of construction, meal or drink charges made by any place that does not regularly serve meals or drinks to the public are excluded from the tax. *See, e.g., Giloti v. Hamm–Singer Corp.*, 396 S.W.2d 711, 713 (Mo.1965)(holding that when "a statute enumerates the subjects or things on which it is to operate, or the persons affected, or forbids certain things, it is to be construed as excluding from its effect all those not expressly mentioned"). Section 144.020.1(6), therefore, excludes from taxation the charges for meals and drinks paid to a place that does not serve the public.

■ As the Director points out, however, charges for meals and drinks also appear to be encompassed within section 144.020.1(2), which taxes fees or charges made to or in any place of amusement. Under the stipulated facts of this case, section 144.020.1(6), therefore, stands in conflict with section 144.020.1(2). Resolution of the conflict is guided by deference to the more specific of the two subdivisions. When the same subject matter is addressed in general terms in one statute and in specific terms in another, the more specific controls over the more general. *Terminal R.R. Assn. of St. Louis v. City of Brentwood*, 360 Mo. 777, 230 S.W.2d 768, 769 (1950). In the present case, subdivision 6 of section 144.020.1, by implication specifically excluding from tax charges for food and drink sold in a place that does not regularly serve the public, is more specific than subdivision 2 with respect to the transaction the Director seeks to tax, that is, charges for food and drinks. Subdivision 6, then, controls over subdivision 2.

The Director contends that the language of subdivision 2 is clear and unambiguous; therefore, no construction of section 144.020.1 is permitted. This might be so had the legislature not also enacted subdivision 6, the sole subdivision of section 144.020.1 that addresses directly and specifically the taxation of meals and drinks. Any taxpayer who sells meals and drinks could read section 144.020.1 and logically determine that subdivision 6 governs the sale of meals and drinks. If the taxpayer's meal and drink sales are not "to the public," the taxpayer could reasonably conclude that 144.020.1 does not apply at all, because subdivision 6 applies only to sales to the public. The Director, in contrast, argues that the taxpayer should determine that subdivision 2 applies because it is written broadly enough to encompass sales of food or drink by a place of amusement that does not serve the public. Section 144.020.1,

therefore, is fairly open to two interpretations and requires construction.

The Director also asserts that no negative implication can be inferred under 144.020.1(6) because 144.020.1(2) and 144.020.1(6) tax different transactions in which different entities engage. As best as can be discerned, the Director's argument is that subdivision 6 does not tax charges for meals and drinks furnished to those other than "the public" because such transactions are taxed under subdivision 2. The Director concludes that this Court would be incorrect in reading a negative implication into 144.020.1(6), because doing so manufactures a conflict with 144.020.1(2). For the reasons stated in the immediate preceding paragraph, the Director's argument must fail.

The service charge Greenbriar charges to its members for food and drink is not subject to sales tax. The decision of the AHC is reversed.

HOLSTEIN, C.J., PRICE, LIMBAUGH, ROBERTSON and WHITE, JJ., and McHENRY, Senior Justice, concur.

BENTON, J., not sitting.