**BRAMBLES INDUSTRIES, INC., A/K/A CHEP USA, Appellant,**

**v.**

**DIRECTOR OF REVENUE, Respondent.**

No. 80687.

Supreme Court of Missouri, En Banc.

Dec. 22, 1998.

James C. Owen, Katherine S. Walsh, Chesterfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty., Gen., Evan J. Buchheim, Asst. Atty. Gen., Harry D. Williams, Department of Revenue, Jefferson, for respondent.

RONNIE L. WHITE, Judge.

Brambles Industries, Inc., doing business as Chep USA (Chep), leases pallets—portable platforms for storing or transporting freight—to Procter & Gamble (P & G) for use in shipping soap from P & G's St. Louis plant to its customers, generally retail stores. Pursuant to section 144.020(8), which imposes a sales tax on certain leases of personal property, Chep collected tax on these transactions from P & G and remitted it to the Director. Chep then filed for a refund of this tax, arguing that the lease proceeds were excludable from sales tax, since pallets purchased under identical circumstances would be excluded from sales tax as purchases for resale. The Director denied the refund application, and the AHC affirmed, holding that lease transactions are not eligible for a sale for resale exclusion because title is not transferred. Because we find that transfer of the right to use property may also qualify as a sale for resale, and that personal property leased under circumstances where a sale would be excludable qualifies for a parallel exclusion under section 144.010(3), we reverse.

Before the AHC, Chep presented testimony of one witness, P & G's purchasing manager for its St. Louis plant. He testified that P & G acquires pallets from several sources, including Chep, and that these pallets are functionally identical, although the Chep pallets are a distinctive color and marked with the Chep logo. While P & G purchases some pallets outright, it pays for the Chep pallets based upon the number of days they are in P & G's possession. At the P & G plant pallets are stacked with soap, shrink-wrapped into a "unit load" and shipped to retail stores without regard to whether they are rented or leased, and customers are charged the same amount whether rented or leased pallets are used to ship the merchandise. P & G does not receive either rented or leased pallets back from its customers. No evidence was presented as to whether P & G's customers were required to return pallets to Chep, and although the witness testified that the Chep

pallets (and some of the purchased pallets) are "recycled" he did not make clear exactly what that entailed. The AHC found that Chep maintained ownership of and title to the pallets at all times, and that the transaction between P & G and Chep was a lease.

Chep argued that the pallets were transferred to P & G "for resale," and that this transaction was not taxable because section 144.010(8) excludes from taxation those sales that are "for resale." The AHC rejected this argument, holding that the sale for resale exception in section 144.010(8) is an exception to the definition of "sale at retail," which requires a sale, that is, a transfer of ownership. Since Chep did not transfer ownership, the AHC held, it is not entitled to the sale for resale exclusion.

 On review, this Court is bound to uphold decisions of the AHC only to the degree that they are authorized by law,[1] and interpretation of the law is a matter requiring the independent judgment of the reviewing Court.[2] Here the AHC misinterpreted the law. While it is true, as the AHC concluded, that section 144.010(8) does not, in and of itself, provide an exclusion for the proceeds of a lease, it is nevertheless relevant in determining whether such an exclusion is available. Under section 144.010(3), "gross receipts" (the amount upon which the sales tax is determined) include, in addition to the proceeds from sales at retail,

> the lease or rental consideration where the right to continuous possession or use of any article of tangible personal property is granted under a lease or contract and such transfer of possession would be taxable if outright sale were made and, in such cases, the same shall be taxable as if outright sale were made and considered as a sale of such article, and the tax shall be computed and paid by the lessee upon the rentals paid....

Thus, the proceeds of a lease are includable in gross receipts only to the degree that proceeds from a comparable sale would be includable.

To be included in gross receipts, sales proceeds must be derived from a "sale at retail," a category that generally includes only those sales made to the purchaser "for use or consumption and not for resale in any form as tangible personal property...."[3] The question of whether packing materials are resold rather than used or consumed by the packager was dealt with comprehensively by this Court in *Sipco, Inc. v. Director of Revenue*.[4] Under *Sipco*, packaging material is resold if there is "(1) a transfer, barter or exchange; (2) of the title or ownership of tangible personal property or the right to use, store or consume the same; (3) for a consideration paid or to be paid."[5] As described above, to the degree that a lease would be a sale for resale if an outright sale had been made, section 144.010(3) requires that the proceeds from such a lease be excluded from gross receipts. Thus, just as packaging material is purchased for resale when it is purchased for the purpose of transferring the right to use it in return for consideration, leases of packaging material are excluded from sales tax where the material is leased for the purpose of transferring the right to use the packaging material to a subsequent purchaser for valuable consideration. Thus, it is not necessary, as the AHC held, for title or ownership of the property to be transferred to the subsequent purchaser in order for the lease proceeds to be excluded from tax.

The Director's brief admits as much, stating that, despite the AHC's holding, the Director does not dispute the existence of such an exclusion. Instead, the Director focuses his argument on the alleged failure of Chep to prove that the transaction at issue here would meet the *Sipco* test if an outright sale had been made, an issue upon which the

---

1. Section 621.193, RSMo 1994.

2. *St. Louis County v. State Tax Comm'n*, 562 S.W.2d 334, 337–38 (Mo. banc 1978).

3. Section 144.010(8), RSMo 1994.

4. 875 S.W.2d 539 (Mo. banc 1994).

5. *Id.* at 542. Although *Sipco* is a use tax case, its analysis has been extended to sales tax. *Dean Machinery v. Director of Revenue*, 918 S.W.2d 244, 245–46 (Mo. banc 1996); *House of Lloyd v. Director of Revenue*, 884 S.W.2d 271, 275.

taxpayer bears the burden of proof.[6] In particular, the Director argues that Chep's failure to produce evidence of the relationship between Chep and P & G's customers is fatal to Chep's claim. For instance, the Director proposes, Chep could have a contract with each of P & G's customers requiring them to maintain and return the leased pallets to Chep. Under those circumstances, arguably, the right to possession is not transferred for value by P & G to its customer, but rather the right to use is transferred by Chep from P & G to the customer in return, perhaps, for the consideration of promising to return the pallets.

If there is evidence inconsistent with the theory put forth by the taxpayer, the Director did not present it to the AHC, and Chep adduced sufficient evidence to establish a prima facie case that it is entitled to the packaging materials exclusion described in *Sipco*. As to the first two prongs of the *Sipco* test, the undisputed evidence presented was that P & G had the right to use Chep's pallets, and that it physically transferred those pallets to its customers. The Director does not appear to dispute the obvious implication of this fact: that P & G's customers had the right to use the pallets to transport and hold the purchased soap at least until such time as the customers unpacked the soap from its unit load. Thus, the transfer and right to use prongs of *Sipco* are met, and the question is essentially one of consideration. That is, did the transfer of the right to use from P & G to its customers occur in return for consideration.

As this Court has noted, a primary goal of the ruling in *Sipco* was to simplify the problems of proof encountered by taxpayers in attempting to show that consideration was paid for packaging materials, where, as here, the cost of such materials was not separately stated apart from the price paid for the goods.[7] The uncontradicted evidence presented by Chep was that P & G's customers paid the same price for its product regardless of whether it was shipped on pallets owned by P & G or on leased pallets. It is assumed that, since the purchased pallets, apparently, became the customers' property, the price of the pallets was factored into the purchase price of the soap and that, therefore, P & G received consideration for those pallets.[8] The fact that P & G's customers pay the same price for leased pallets implies that some consideration should also be assumed to have been paid for the right to use those pallets. Given that Chep's ultimate burden here is to show that an outright sale would not have been taxable, this fact is particularly compelling, since it implies that, to P & G's customers, the economic difference between a leased pallet and a pallet purchased free from sales tax is negligible. Chep met its burden of proving that the leased pallets would have qualified as being sold for resale under *Sipco* if an outright sale had been made, and, therefore, that the lease proceeds should have been excluded from gross receipts under section 144.010(3).

The decision of the Administrative Hearing Commission is reversed and the cause remanded for further proceedings consistent with this opinion.

All concur.

---

6. Section 621.050.2, RSMo 1994.

7. *House of Lloyd*, 884 S.W.2d at 275–76.

