**RONNOCO COFFEE COMPANY, INC., Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**Rose Coffee Company, Inc., Respondent,**

v.

**Director of Revenue, Appellant.**

**Ronnoco Coffee Company, Inc., Respondent,**

v.

**Director of Revenue, Appellant.**

**Nos. SC 86724, SC 86725, SC 86912.**

Supreme Court of Missouri, En Banc.

Feb. 14, 2006.

---

Jeremiah W. (Jay) Nixon, Atty. General, Alana M. Barragan–Scott, Deputy Solicitor, Jefferson City, for appellant.

Edward F. Downey, Jefferson City, B. Derek Rose, St. Louis, for respondent.

MARY R. RUSSELL, Judge.

The Director of Revenue seeks review of the Administrative Hearing Commission's ("AHC") decisions finding that Ronnoco Coffee Company and Rose Coffee Company (collectively "Coffee Companies") were exempt from payment of sales and use tax on their purchases of certain coffee equipment. The AHC's decisions are affirmed.

## I. Jurisdiction and Standard of Review

 This Court has jurisdiction to review the AHC's decisions pursuant to Mo. Const. art. V, section 3, as the cases involve construction of the state revenue laws. This Court reviews the AHC's interpretation of revenue law *de novo*. *Six Flags Theme Parks, Inc. v. Dir. of Revenue*, 102 S.W.3d 526, 527 (Mo. banc 2003). The AHC's factual determinations are upheld if the law supports them and, after reviewing the whole record, there is substantial evidence to support them. *Id.*

 Exemptions for taxation are strictly construed against the taxpayer and, as such, it is the burden of the taxpayer claiming the exemption to show that it fits the statutory language exactly. *Id.* at 528. It is the Director's burden to show a tax liability. *Id.* at 529.

## II. Background

Coffee Companies sell whole and ground coffee beans, tea, instant coffee products, and condiments to businesses that buy the items for resale or for their customers' use.[1] During the tax periods at issue, Coffee Companies purchased coffee grinding and brewing equipment and parts (collectively "coffee equipment")[2] from vendors both in and out of Missouri. Coffee Companies paid use tax on their purchases of the coffee equipment from out of Missouri.

They sold the coffee equipment outright to some of their customers. If a customer did not want to buy the coffee equipment outright, however, Coffee Companies executed a "loan agreement" with the customer.

Ronnoco's "loan agreement" provided that its customer could use its coffee equipment for "consideration of $1.00" and waiver of all liability for personal injury and property damage.[3] The customer, however, could only use the coffee equipment for making, storing, and distributing Ronnoco's coffee products and only for so long as the customer purchased Ronnoco's coffee products.[4] The customer could not assign the "loan agreement," and could not encumber, sell, or otherwise dispose of the coffee equipment. The equipment remained Ronnoco's property and Ronnoco could remove it at any time. The "loan agreement" stated that the customer was responsible for maintenance and repair of the coffee equipment. Despite this language, however, Coffee Companies, not customers, purchased all replacement parts and performed all maintenance for the coffee equipment.

Coffee Companies did not charge a separate tax on the customers' use of the coffee equipment under the "loan agreement,"

---

1. Ronnoco sells to grocery stores, restaurants, hotels, and similar businesses that buy the items for resale or use by their customers. Rose sells to convenience stores, businesses like law and accounting firms, and "resellers that resell to these businesses."

2. For simplicity, this opinion refers to all of Coffee Companies' purchases at issue—including equipment, parts, display items, and storage items—collectively as "coffee equipment" or simply "equipment."

3. Rose's "loan agreement" was not significantly different, differing only in that it did not provide a $1.00 consideration provision. The evidence showed, however, that despite Ronnoco's "loan agreement" language, it never collected the $1.00 consideration from its customers.

4. Coffee Companies presented evidence that once customers stopped buying their products, they could no longer use the coffee equipment under the "loan agreement," but could buy the equipment outright. They did not provide information, however, on whether such sales took place during the tax periods at issue.

but instead charged customers more for purchases of coffee beans and tea. The more the coffee equipment cost Coffee Companies, the more their "loan agreement" customers paid for coffee beans and tea.

### III. Procedural History

Because this opinion jointly addresses three cases, it is helpful to outline the procedural history of each case separately.

The Director's first appeal against Ronnoco raises the issue of whether Ronnoco is entitled to a refund of $124,799.85, plus interest, for use tax it paid, from the fourth quarter 1998 through the third quarter 2002, on certain coffee equipment used by its customers. Ronnoco argued it qualified for a refund because it resold the coffee equipment to customers, meriting an exemption under section 144.615(6),[5] RSMo 2000.[6] The Director denied Ronnoco's refund claim, and Ronnoco sought review of the Director's decision from the AHC. The AHC granted Ronnoco's refund request, finding that the resale exemption under section 144.615(6) applied because Ronnoco resold the coffee equipment at issue. The Director now seeks review of the AHC's decision granting Ronnoco a refund.

Similarly, the Director's appeal against Rose raises the issue of whether Rose is entitled to a refund of $135,803.59, plus

interest, for use tax it paid, from the fourth quarter 1998 through the third quarter 2002, on certain coffee equipment used by its customers. Like Ronnoco, Rose sought a refund under section 144.615(6), which the Director denied. Rose sought review by the AHC, which concluded that Rose was entitled to a refund. The Director now seeks review of the AHC's decision granting Rose a refund.

The Director's other appeal against Ronnoco differs in that no refund was sought in this case. Instead, this case began when the Director audited Ronnoco and assessed sales tax and use tax[7] on its purchases of coffee equipment and related items.[8] Ronnoco disputed the assessments, generally on the basis that the purchases were exempt purchases for resale. The AHC found in Ronnoco's favor, and the Director asks this Court to order Ronnoco to pay the taxes assessed.

In finding in Coffee Companies' favor in each of these cases, the AHC rejected the Director's argument that Coffee Companies' owed tax on the equipment at issue under section 144.020.1(8), which imposes tax on the rental or lease of tangible personal property. The AHC found that Coffee Companies' "loans" of coffee equipment to their customers were not lease transac-

---

5. Section 144.615 states in relevant part: "There are specifically exempted from the taxes levied in sections 144.600 to 144.745:.... (6) Tangible personal property held by processors, retailers, importers, manufacturers, wholesalers, or jobbers *solely for resale* in the regular course of business[.]" (emphasis added)

6. All further statutory references are to RSMo 2000, unless otherwise indicated.

7. The audit began in early 2001 and covered January 1998 through December 2000 for use tax and March 1998 through February 2001

for sales tax. The Director assessed $17,407.72 sales tax, plus interest, and $17,161.36 use tax, plus interest.

8. These items included display items like fabric canopies, storage bins, and signs. There was no evidence that customers ever purchased display items from Ronnoco. Instead, if they ceased buying Ronnoco products, they then could purchase the display items or return them. The cost of the display items was factored into the price that customers paid for coffee beans and tea.

tions subject to section 144.020.1(8), but were instead tax exempt resales.

## IV. Issue Presented

The issue presented in each of these three cases is the same: Did the AHC properly conclude that Coffee Companies' purchases of coffee equipment, which it loans to customers who use Coffee Companies' products, are exempt from use and sales tax?

## V. Does an exemption exist?

Section 144.610 imposes a use tax on Coffee Companies' storage, use, or consumption within Missouri of any tangible personal property. The sale of property in the regular course of business, however, is expressly excluded from the definition of use and, therefore, from the use tax levy. Section 144.605(13). For purposes of the use tax, section 144.605(7) defines a "sale" as:

> any transfer, barter or exchange of the title or ownership of tangible personal property, or the right to use, store or consume the same, for a consideration paid or to be paid, and any transaction whether called leases, rentals, bailments, loans, conditional sales or otherwise, and notwithstanding that the title or possession of the property or both is retained for security.

"Tangible personal property held ... *solely for resale* in the regular course of business" is expressly exempt from use tax. Section 144.615(6) (emphasis added). In determining whether there is a resale such that the resale exemption of section 144.615(6) applies, three elements must be met: (1) a transfer, barter, or exchange; (2) of the title or ownership of tangible personal property, or the right to use, store, or consume the same; (3) for consideration paid or to be paid. *Aladdin's Cas-*

*tle, Inc. v. Dir. of Revenue*, 916 S.W.2d 196, 198 (Mo. banc 1996).

■ Coffee Companies' costs for the coffee equipment that they provided to "loan agreement" customers was considered when setting the prices those customers were charged for coffee and tea products. The more the equipment cost Coffee Companies, the more Coffee Companies charged customers using that equipment for coffee and tea. The elements required for a resale were met in Coffee Companies' "loan agreement" transactions in that the equipment was transferred to the customer, who had the right to use that equipment, for the consideration of (1) continued purchase of Coffee Companies' products and (2) payment of an increased cost of those products based on the cost of the equipment used.

This Court has repeatedly held that where a business does not charge separately for goods transferred to customers but, rather, factors the cost of the goods into the price of all items sold to the customers, such goods are exempt from the use tax. *Aladdin's Castle*, 916 S.W.2d at 197 (prizes at arcade were exempt from use tax because were resold in that the cost of prizes was included in price charged for tokens); *House of Lloyd v. Dir. of Revenue*, 884 S.W.2d 271, 275 (Mo. banc 1994) (packing material was exempt from use tax where it was purchased solely for resale, despite fact that marketer received some incidental benefit from packing material); *Sipco, Inc. v. Dir. of Revenue*, 875 S.W.2d 539, 542 (Mo. banc 1994) (dry ice used to preserve pork in shipments to customers was exempt from use tax as it was resold in that the value of the dry ice was factored directly or indirectly into the total consideration paid for the pork); *King v. Nat'l Super Mkts., Inc.*, 653 S.W.2d 220, 222 (Mo. banc 1983) (grocery store resold bags to its customers because

cost of bags was factored in to cost of groceries), *abrogated by Sipco*, 875 S.W.2d at 542 (*King* implied that the holder of goods must show a calculated cost specifically factored into the price for resale to claim the resale exemption, but *Sipco* held this specific calculation was no longer necessary).

Previous cases have applied the resale exemption in the context of the loan or rental of an item to a customer, rather than an outright transfer of title or ownership.

In *Weather Guard, Inc. v. Director of Revenue*, 746 S.W.2d 657 (Mo.App.1988), the court [9] relied on previous decisions of this Court in holding that an insulation wholesaler qualified for the resale exemption on its purchases of insulation installation machines that were used to promote the sale of its insulation to retailers. The wholesaler loaned the machines to retailers who purchased insulation so that they could sell the insulation to retail customers in a "do-it-yourself" program. *Id.* at 657. At all times, the machine remained the property of the wholesaler, but was on loan to the retailer for use by retail customers. *Id.* In accordance with an agreement entered between the wholesaler and retailer, the wholesaler would repair the machine at the retailer's expense, though the retailer was credited for repairs in the cost of insulation. *Id.* According to the agreement, the retailer would return the machine to the wholesaler upon request. *Id.* In exchange for this arrangement, the retailer agreed to purchase and use exclusively wholesaler's insulation. *Id.* at 658.

The *Weather Guard* court determined that the wholesaler was entitled to the use tax resale exemption under section 144.615(6) because the definition of "sale" in section 144.605(5),[10] RSMo 1986, qualified a rental as a sale. *Id.* The court found that because the cost of the machines was factored in to the price for the insulation sold in the "do-it-yourself" program, the consideration element required for the resale exemption was met. *Id.* It noted that "because the customers paid sales tax on the increased cost of the insulation, there was no loss of tax revenue to the State" and "to impose a use tax would amount to double taxation." *Id.* (citing *Mgmt. Servs., Inc. v. Spradling*, 547 S.W.2d 466, 468 (Mo. banc 1977) (primary purpose of section 144.610 is to supplement and protect the sales tax on out-of-state purchases)).

This case is similar to *Weather Guard*. As with the insulation machines in *Weather Guard*, Coffee Companies' coffee equipment is loaned to customers, but remains Coffee Companies' property. Also, like in *Weather Guard*, there is no stated extra charge for customers' use of the equipment, but consideration is given insofar as the customers' cost for the products used with the equipment reflects the cost of the use of the equipment itself. Like the wholesaler in *Weather Guard*, Coffee Companies are entitled to the use tax resale exemption under section 144.615(6).

Coffee Companies are also entitled to an exemption from sales tax on the purchases at issue because they are for resale. In *Brambles Industries v. Director of Revenue*, 981 S.W.2d 568 (Mo. banc 1998), this Court determined that a lessor of shipping pallets was entitled to a sales tax refund for taxes it had paid on leases of pallets. The lessor had remitted sales tax on the leases of the pallets under section

---

**9.** *Weather Guard* was originally filed with this Court, but this Court transferred the case to the Court of Appeals, Eastern District. 746 S.W.2d at 657.

**10.** This definition is now in section 144.605(7).

144.020.1(8). *Brambles*, 981 S.W.2d at 569. The lessor, however, sought a refund of the taxes, arguing that the lease proceeds were excludable from sales tax because if the pallets were sold outright under identical circumstances, they would be excluded from sales tax as purchases for resale. *Id.* This Court found that to the extent that a lease would be a sale for resale if an outright sale had been made, section 144.010(3), defining "gross receipts," requires that the proceeds from such a lease be excluded from gross receipts and, therefore, not considered in determining sales tax. *Id.* at 570. In *Brambles*, this Court declared that the "right to use" element of resale was satisfied regardless of whether the customers were obligated to return the pallets, and the consideration element was satisfied by evidence that customers paid the same price regardless of whether they rented or purchased the pallets. *Id.* at 571.

Similarly, in this case, the fact that Coffee Companies' customers are required to return the equipment if the "loan agreement" is terminated does not defeat the fact that customers give consideration for the right to use the equipment under the terms of the agreement. Like the lessor's transactions in *Brambles*, Coffee Companies' transactions meet the definition of resale and are, therefore, exempt from sales tax.

11. By this conclusion, the Court respectfully disagrees with the dissent's contention that section 144.020.1(8) must control these cases because it specifically imposes a tax on leases and the facts here conform to the definition of a lease. This position requires this Court to ignore precedent applying the resale exemption in cases with similar fact patterns. These past "factoring in" cases recognize that "leases" are included in the definition of "sale" under section 144.605(7). Since these "factoring in" cases, the legislature has not acted to remove "leases" from the definition of

## VI. Conclusion

For the foregoing reasons, the AHC's decisions in favor of Coffee Companies are affirmed.[11]

PRICE, TEITELMAN, LIMBAUGH and WHITE, JJ., concur; WOLFF, C.J., dissents in separate opinion filed; STITH, J., concurs in opinion of WOLFF, C.J.

MICHAEL A. WOLFF, Chief Justice, dissenting.

I would reverse the decision of the Administrative Hearing Commission and hold that purchases of equipment by the coffee companies are subject to the use and sales tax. The use of the equipment in this instance constituted a lease; therefore, the resale exemption does not apply.

The AHC determined that the transactions between the coffee companies and their customers were loans, not leases, and that section 144.020.1(8) did not apply because the coffee companies "did not have a stated charge for [their] customers' use of the equipment." That determination was wrong on both counts.

"Lease" is not defined in the tax statutes, but it is defined in Missouri's Uniform Commercial Code as "a transfer of the right to possession and use of goods for a term in return for consideration . . .". Section 400.2A–103(1)(j), RSMo Supp. 2005.[1] Although this definition is found in

"sale." This Court should not ignore these past cases and the language of section 144.605(7). Adherence to the doctrine of stare decisis is helpful in a case such as this because the doctrine offers stability and predictability for taxpayers. Stability in the law by following the "factoring in" analysis is preferable to avoid confusion about the application of tax statutes that are, according to the dissent, "incoherent" and "dysfunctional."

1. All statutory references are to RSMo 2000, unless otherwise noted.

the commercial code, when the legislature enacts a statute using terms that are defined elsewhere in Missouri statutes, the legislature is presumed to have knowledge of those other definitions. *Citizens Elec. Corp. v. Director of Dept. of Revenue,* 766 S.W.2d 450, 452 (Mo. banc 1989). This definition is substantially the same as the dictionary definition: "a contract by which one conveys [property] for life [or] for a term ... usually for a specified rent or compensation." *Webster's Third New International Dictionary* (1993). Words that are not defined in a statute are given their ordinary meaning according to the dictionary. *Asbury v. Lombardi,* 846 S.W.2d 196, 201 (Mo. banc 1993).

Whichever definition of "lease" is used, it is clearly satisfied by the contracts here. The contracts provide that the coffee companies retain ownership of the equipment and that the customer has the right to possess and use the equipment, but only for the purposes set by the coffee companies. The term is that time period during which the customer continues to purchase coffee and tea from the coffee companies. The consideration is the additional money paid by the customer in order to use the equipment.

The AHC's determination that these arrangements are not leases because there is no "stated charge" is contradicted by the coffee companies' admission that the cost of the equipment is "factored into" the cost of the coffee they sell their customers. The coffee companies add a set amount to the cost of the contract to cover the cost of the equipment used by the customer. As a result, purchase of coffee alone costs less than purchase of coffee and lease of equipment to use with the coffee, and the loan of a more expensive machine costs more than the loan of a less expensive machine. While not separated out for payment, the agreement clearly includes a stated charge for the lease of the equipment used to make or grind the coffee—that charge is the difference between the cost of purchase of the coffee alone and purchase of the coffee plus the lease of the machines.

The transactions satisfy the definition of "lease." Leases of equipment are subject to tax under section 144.020.1(8), RSMo Supp.2005, which states:

1. A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state ... as follows:

(8) A tax equivalent to four percent of the amount paid or charged for rental or lease of tangible personal property, provided that if the lessor or renter of any tangible personal property had previously purchased the property under the conditions of "sale at retail" ... or leased or rented the property and the tax was paid at the time of purchase, lease, or rental, the lessor, sublessor, renter, or subrenter shall not apply or collect the tax on the subsequent lease, sublease, rental or subrental receipts from that property.

The issue is made more complex by the language of section 144.605(7), which includes "leases" in the definition of "sale," and section 144.615(6), RSMo Supp.2005, which exempts property held "solely for resale" from taxation. A "resale" requires three elements: (1) a transfer, barter, or exchange; (2) of title to or the right to use tangible personal property; (3) for consideration. *Aladdin's Castle, Inc. v. Director of Revenue,* 916 S.W.2d 196, 198 (Mo. banc 1996). Read in isolation, this would suggest that a lease should not be taxed if it is considered a "resale."

The majority opinion does not address the inherent contradiction between the legislature's adoption of a specific provision

taxing leases, section 144.020.1(8), and its adoption of a definition of "sale" that can include leases. Section 144.605(7). But, all statutory provisions are to be given some meaning, and it is assumed that the legislature would not enact a meaningless statute. *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992). Further, laws are to be interpreted *in pari materia* in order to determine their meaning. *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 200 (Mo. banc 1991). Under this doctrine, statutes involving related subject matter are construed together as though constituting one consistent act, even if adopted at different times. *Id.*

Since the provision taxing leases must mean something, the rules of statutory construction serve as a guide to its meaning. The primary rule of statutory construction is to give effect to the intent of the legislature. *Spradlin v. City of Fulton*, 982 S.W.2d 255, 258 (Mo. banc 1998). Where general terms in one part of a statute are inconsistent with specific terms in another part, the specific terms are controlling, "unless the statute as a whole clearly shows the contrary intention." *Terminal R.R. Ass'n of St. Louis v. City of Brentwood*, 360 Mo. 777, 230 S.W.2d 768, 769 (1950).

Prior cases indicate the legislative intent in adding the lease provision to the statute. In *International Bus. Mach. Corp. v. State Tax Comm'n*, 362 S.W.2d 635 (Mo.1962), the State argued that the lease of equipment constituted a transfer of ownership and was a "sale at retail." This Court disagreed and held that leases were not included in that term: "had the legislature desired or intended to impose a sales tax on any and all lease transactions it would have been a very simple matter to plainly manifest that purpose by express provision in the act." *Id.* at 639. That decision was followed in *Federhofer, Inc. v. Morris*, 364 S.W.2d 524, 527 (Mo.1963), where the Court again held that a lease was not taxable under the "sale at retail" provision of section 144.020, RSMo 1959.

In 1963, the legislature accepted the invitation of *International Bus. Mach.* and added section 144.020.1(8), which imposed a tax on "the amount paid or charged for rental or lease of tangible personal property." This Court subsequently held that this provision required a general tax to be imposed on all leases. *International Bus. Mach. Corp. v. David*, 408 S.W.2d 833, 837 (Mo. banc 1966) overruled on other grounds by *Southwestern Bell Yellow Pages, Inc. v. Director of Revenue*, 94 S.W.3d 388 (Mo. banc 2002).

Following the rules of statutory interpretation, the legislature's intent is first ascertained. It appears that the purpose of the 1963 amendment was to tax leases of tangible personal property, such as the coffee equipment at issue in this case. The lease provision is more specific, when applied to this case, than is the "resale" provision; this also weighs in favor of finding these transactions to be taxable as leases. Finally, the resale provision is an exemption, which must be construed strictly against the taxpayer. *Branson Properties USA, L.P. v. Dir. of Revenue*, 110 S.W.3d 824, 825 (Mo. banc 2003). Since every provision of the statute must have a meaning, the proper interpretation of the lease provision in section 144.020.1(8) is that true leases are meant to be taxed. This is consistent with the principles of statutory construction, with the legislative history relating to the addition of the lease provision to the statute, and with the principle that exemptions are to be construed against the taxpayer.

This position is consistent with prior cases where leases were found to be taxable. This is not inconsistent with our prior "factoring in" cases relied on by the

coffee companies. Nearly all of those cases dealt with whether a lease tax should be imposed where an item was given to the customer to use and keep. *See, e.g., Kansas City Power and Light Co. v. Director of Revenue,* 83 S.W.3d 548 (Mo. banc 2002) (electricity sold to hotel guests); *Sipco, Inc. v. Director of Revenue,* 875 S.W.2d 539 (Mo. banc 1994) (dry ice used in packaging meat shipments). These cases are factually distinguishable, in that they do not involve true leases, for the item is not being returned and no separate charge is made.

By contrast, here, the coffee equipment is being returned, and the extra cost for it is separately determined, and if it is not used, then the charge for it is not included in the contract price. Here, unlike in the factoring in cases, the equipment is truly being leased.

The two lease cases relied on by the coffee companies are *Weather Guard, Inc. v. Director of Revenue,* 746 S.W.2d 657 (Mo.App.1988), and *Brambles Industries, Inc. v. Director of Revenue,* 981 S.W.2d 568 (Mo. banc 1998). Weather Guard provided insulation and machines to retailers. The machines allowed consumers to install the insulation themselves. The retailers sold the insulation along with a license for use of the machine. The cost of renting the machine was included in the insulation purchase. The retailers signed agreements with Weather Guard that were similar to the agreements in this case. Weather Guard maintained ownership of the machines, and the retailers agreed to sell only Weather Guard insulation. The issue in the case was whether the machines were subject to taxation as leases or exempt as resales. The court of appeals interpreted the resale provision as applying to the machines; thus, their rental to the retailers was not subject to tax. *Id.* at 658. This Court is the only one that can construe the state revenue laws. Mo. Const. art. V, § 3. The court of appeals can merely apply settled law. In *Weather Guard,* the court of appeals went beyond prior case law in construing the statute to apply to that situation. It had no authority to do so, and that case should not be followed here.

The other case supporting the coffee companies' position, *Brambles,* fails to acknowledge the existence of section 144.615(6), much less resolve the conflict between it and section 144.020.1(8). Thus, it too is not helpful. To the extent that *Weather Guard* and *Brambles* can be read to address the situation presented by this case, however, they should not be followed.

This case and many other recent cases serve as a reminder of the piecemeal condition of the state's sales tax law. The law was created decades before the creation of the modern economy of goods and services, marketed in ever new and interesting ways. The law has been riddled with exceptions and exemptions over the years. Its holes have occasionally been patched, as with the addition of leases in 1963, as discussed above. What is left is a law that is incoherent, dysfunctional, and not particularly helped by this Court's efforts at interpretation over the years.

I respectfully dissent from today's interpretation.